PETER C. WOLFF, JR. #2332
Federal Public Defender
District of Hawaii
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii 96850-5269
Telephone: (808) 541-2521
Facsimile: (808) 541-3545
E-Mail: peter_wolff@fd.org

Counsel for Petitioner
ROYCE C. GOUVEIA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JAN 1 8 2017
at 10 o'clock and 30 min. __M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROYCE C. GOUVEIA<br>Petitioner<br><br>v.<br><br>NOLAN ESPINDA, Director of the Department of Public Safety for the State of Hawaii; and DOUG CHIN, Attorney General of the State of Hawaii<br>Respondents | No. CV17 00021 SOM<br><br>Memorandum in Support of Section 2254 Petition; Certificate of Service    KJM |

**Memorandum in Support of Section 2254 Petition**

1. **Petitioner's Habeas Claim.** The petitioner claims that the Fifth Amendment's double jeopardy clause precludes the State of Hawaii from retrying him in Cr. No. 12-1-1474 following a jury's verdict acquitting him on the only offense submitted to them, reckless manslaughter, at a first trial.

2. **Pertinent Facts.** The pertinent facts are not many, nor in dispute. The facts recited below are culled from the state appellate decisions, *State v. Gouveia*,

[1]

384 P.3d 846 (Haw. Oct. 25, 2106), affirming 348 P.3d 496, 2016 WL 2066780 (Haw. Ct. App. Apr. 30, 2015), and are supported by the documents counsel has obtained from the state circuit court record, filed in this Court as Petitioner's Exhibits. The complete state court record that pertinent federal rules require the respondents (the State) to file in this matter will also confirm the facts related in this memorandum.

The State charged the petitioner with reckless manslaughter, in violation of Haw. Rev. Stat. §707-702(1)(a), for fighting Albert Meyer. During the fight, Meyer got knocked to the ground, his head struck pavement, and he died two days later. The circuit court instructed the jury to base their verdict on the evidence presented at trial. The court also instructed jurors on reckless manslaughter (without any lesser included offenses) and on self-defense. The jury retired to deliberate at 10:35 am on September 6, 2013. Some four hours later, the jurors had fully executed a verdict form acquitting the petitioner and then sent a communication, written at 2:20 pm, to the court announcing they had reached that verdict. Four minutes *after* writing the communication saying they had reached a verdict, the jury foreperson penned another (bearing the time of 2:24 pm), noting that some jurors were concerned about their safety. The latter note read: "Concern. This morning on the prosecutor's side of courtroom there was a man, shaved head,

glaring and whistling at defendant. We have concern for our safety as jurors." The man was Meyer's brother.

With the parties' consent, each juror testified about the latter note. Although one juror testified that *other* jurors *seemed* affected by Meyer's brother's conduct during deliberations, each juror nonetheless testified that the man's conduct had not in fact affected his or her decision about the petitioner's guilt or innocence. The circuit court, however, refused to 'take' the verdict because it did not believe the jurors had testified credibly (yet also concluded that they "were not lying"). The circuit court ruled that the jurors' discussion of Meyer's brother's conduct during deliberations and that they were concerned enough to send the court a communication about it indicated that their deliberations were influenced by his conduct and that their verdict was "tainted." The court consequently granted the State's request to declare a mistrial over the petitioner's objection, ruling that there was a manifest necessity to do so, and further ruled that the State could retry the petitioner without violating the petitioner's state and federal double jeopardy rights. The petitioner emphasized, to no avail, his double jeopardy claim in a motion to dismiss with prejudice, which the circuit court denied.

On appeal and after an unpublished decision from the Intermediate Court of Appeals, the Hawaii Supreme Court affirmed the circuit court's double jeopardy ruling. Although the Hawaii Supreme Court disavowed the circuit court's odd

credibility finding, the Hawaii Supreme Court nonetheless held that the jurors' pre-verdict discussion of, and lingering post-verdict concern about, Meyer's brother's conduct sufficed to establish manifest necessity for declaring a mistrial.

Both the circuit court and the Hawaii Supreme Court preliminarily framed the issue as one arising under the Sixth Amendment's impartial jury right, which the state courts hold the State has as much of a right to as the defendant does under the Sixth Amendment (as incorporated and made applicable to state court proceedings through the Fourteenth Amendment). The state courts pointed to the jurors' discussion of Meyers' brother's conduct as raising a presumption that their deliberations were unduly influenced by his conduct. The state courts further found or concluded (it's not entirely clear which, but it really doesn't matter) that that presumption was not rebutted by the record. (It is that key finding, unsupportable on the state court record, that truly unravels the state court's analysis.) And the state courts consequently determined that the jury's verdict was therefore tainted by the presumed partiality caused by the jury having been fearful of Meyer's brother. The state courts' double jeopardy finding of manifest necessity thus rested on the state courts' conclusion that the jury was not impartial.

It bears pointing out here, before discussing it further below in the argument section of this memorandum, just how odd is the state courts' reasoning. Each juror voted to acquit the defendant. Finding that they were not impartial given such an

[4]

outcome necessarily requires finding that they were partial in favor of the defendant. Yet the outside influence here consisted of a fear of *retaliation* for reaching the verdict they reached, for, that is, acquitting the defendant, at the hands of someone rooting for the prosecution. It makes no sense that a fear of retaliation at the hands of the victim's brother led any juror to favor the defendant and vote for acquittal. The only way such a fear would influence a juror would be to sway him or her to vote for the prosecution to avoid the feared retaliation. What the sequence of jury communications and their relation to the executed verdict form evinces—the *only* thing the sequence of jury communications and the verdict reasonably convey—is that jurors reached their verdict, acquitting the defendant, *despite*, not *because of*, their fear of retaliation from Meyer's brother. The state courts presumed that fear induced the verdict, when the state court record affirmatively, unambiguously, and solely establishes that it was in fact the other way around: the verdict induced the fear.

3. **Standards of Review.** Habeas relief is available when the last reasoned state court decision (here the Hawaii Supreme Court's published opinion) is contrary to or an unreasonable application of clearly established federal law set down in United States Supreme Court cases or is based on an unreasonable determination of the facts on the basis of the state court record. The "contrary to" standard is satisfied if the Hawaii Supreme Court decided a question of law

[5]

differently than the United States Supreme Court has decided that question on a set of material indistinguishable facts. The "unreasonable application" standard is met if the Hawaii Supreme Court's application of federal law is objectively unreasonable, meaning that it applied federal law in a way that fair-minded jurists would agree was inconsistent with Supreme Court precedent. *McKinney v. Ryan*, 813 F.3d 798, 810–811 (9th Cir. 2016) (en banc). As for the "unreasonable determination of the facts" standard, there is a presumption that the Hawaii Supreme Court's factual assertions are correct, but that presumption can be rebutted by clear and convincing evidence in the state court record. *McDaniels v. Kirkland*, 839 F.3d 806, 809 (9th Cir. 2016).

4. **Argument.** The petitioner's case does not appear to present any procedural issues, so he proceeds directly to the merits of his claim. As noted, the Hawaii Supreme Court recognized that the jury had fully executed a verdict form acquitting the petitioner. *Gouveia*, 384 P.3d at 851, n. 2 (majority recognizes that "it is apparent from the record that the parties believed the sealed verdict was 'not guilty,'" which was "confirmed" when the verdict was unsealed on appeal); *id.*, 384 P.3d at 860, n. 2 (Nakayama, J., dissenting) ("In fact, the verdict, unsealed at the ICA level, revealed that the jury did decide in favor of Gouveia. And while this court had the benefit of seeing the verdict where the circuit court did not, the record suggests that the circuit court also believed the verdict was not guilty."). So

[6]

the first question to answer is whether the circuit court's refusal to "take" (its word) the verdict in open court prevents the jury's decision from being an acquittal under the Fifth Amendment's double jeopardy clause. It doesn't.

The United States Supreme Court's "cases have defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans v. Michigan*, 133 S. Ct. 1069, 1074–1075 (2013) (citing *United States v. Scott*, 437 U.S. 82, 98 & n. 11 (1978), *Burks v. United States*, 437 U.S. 1, 10 (1978), and *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)). An acquittal, accordingly, not only includes any "ruling by the court that the evidence is insufficient to convict," but also includes any "factual finding that necessarily establishes the criminal defendant's lack of criminal culpability," as well as "any other ruling which relates to the ultimate question of guilt or innocence." *Evans*, 133 S. Ct. at 1075 (quoting *Scott*, 437 U.S. at 91, 98, and n. 11) (*Evans'* quotation marks and brackets omitted). Such a "substantive" determination on guilt or innocence is different from a mere "procedural" determination, such as a dismissal or mistrial. *Evans*, 133 S. Ct. at 1075. Because procedural rulings lack the requisite finality, the double jeopardy clause allows for further proceedings following a properly granted dismissal without prejudice or a properly declared mistrial. *Evans*, 133 S. Ct. at 1075. But the double jeopardy clause "attaches particular significance to an acquittal, so a

[7]

merits-related ruling concludes proceedings *absolutely.*" *Evans*, 133 S. Ct. at 1075 (quoting *Scott*, 437 U.S. at 91) (emphasis added). The only reasonable way to apply these precepts here is to recognize that once the jury executed a verdict form unanimously finding the petitioner not guilty, that merits-related decision by the finder of fact concluded the State's prosecution of the petitioner *absolutely.*

Equally well settled in United States Supreme Court cases is the principle that it does not matter whether a verdict of acquittal might be wrong or tainted in some way; there simply is no impeaching a verdict of acquittal. *Evans*, 133 S. Ct. at 1074. "This is because to permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that even though innocent he may be found guilty." *Evans*, 133 S. Ct. at 1075 (quoting *Scott*, 437 U.S. at 91 (quoting *Green v. United States*, 355 U.S. 184, 188 (1957)) (*Evans'* quotation marks and brackets omitted). Thus, "even if the acquittal is 'based upon an egregiously erroneous foundation,'" it still counts. *Evans*, 133 S. Ct. at 1074 (quoting *Fong Foo v. United States*, 369 U.S. 141, 143 (1962) (per curiam)). "A mistaken acquittal is an acquittal nonetheless," the Supreme Court emphasized in *Evans*, "and we have long held that '*a verdict of acquittal could not be reviewed, on error or otherwise,* without putting a defendant twice in jeopardy, and thereby violating the Constitution.'" *Evans*, 133 S. Ct. at 1074 (quoting *United*

[8]

*States v. Ball*, 163 U.S. 622, 671 (1896)) (*Evans*' brackets and ellipsis omitted). Since the jury concluded their deliberations by reaching a verdict acquitting the defendant, that verdict could not be reviewed for whether it was correct or not, for error "or otherwise." *Evans*, 133 S. Ct. at 1074; cf. *Blue ford v. Arkansas*, 132 S. Ct. 2044 (2012) (jury foreperson's report of deadlock on lesser included offenses did not acquit on greater offenses because the jury's deliberations had not concluded, which deprived the foreperson's report from being a final resolution of the defendant's guilt or innocence).

As the state court record unambiguously establishes that the jury had reached a final verdict acquitting the petitioner, the Hawaii Supreme Court unreasonably applied the clearly established federal law set forth above. Impeaching that verdict in any way—much less under the rubric of vindicating the State's right to a mistrial on the basis of nothing more than a presumption that the verdict was tainted, a presumption that the state court record in fact unambiguously and definitively rebuts—simply is not something the double jeopardy clause allows. *Evans*, 133 S. Ct. at 1075 ("a merits-based ruling concludes proceedings absolutely"). The jury executed the verdict form before penning their note communicating to the court that they had done so. That note, furthermore, was written before their subsequent note informing the court that jurors feared the skinhead rooting for the prosecution. The only reasonable inference that can be

drawn from this sequence, and the jury's association of the skinhead with the prosecution, is that jurors were concerned that the skinhead might retaliate against them *because of* the verdict they reached. These circumstances do not reasonably support drawing the contrary conclusion, as the Hawaii Supreme Court and the circuit court did, that the verdict was the product of the jurors' fears.

Where the Hawaii Supreme Court's analysis—even on its own terms, setting aside its failure to start with the clearly established principles of double jeopardy law discussed above—goes wrong is in its assertion that the state court record does not rebut the presumption that the jury's deliberations were influenced by their fear of Meyer's brother. The record establishes that the jury reached its verdict and then *remained* afraid of Meyer's brother. But as the Hawaii Supreme Court saw it, that jurors stated they were "*actually* concerned" for their safety (Hawaii Supreme Court's emphasis) and had discussed Meyer's brother's conduct "at the beginning of deliberations" indicated that "those discussions could have had an effect on the subsequently jury deliberations." *Gouveia*, 384 P.3d at 856. And because the Hawaii Supreme Court saw nothing in the record that established "beyond a reasonable doubt" that the jury was not so influenced, this mere "*possibility* of improper influence" (Hawaii Supreme Court's emphasis again) established manifest necessity to grant the State a mistrial over the defendant's objection. *Id.*, 384 P.3d at 354–356. What the Hawaii Supreme Court unreasonably turned a blind

[10]

eye upon was the sequence of the jury's verdict and its notes and what that sequence necessarily meant, especially in light of the knowledge, which the Hawaii Supreme Court had, that the jury's verdict acquitted the petitioner. It is the result that the jury reached and the sequence of their actions that rebuts the presumption of improper influence that the state courts relied upon to impeach the jury's verdict of acquittal. Moreover, as dissenting Justice Nakayama herself noted, each juror's testimony simply confirms that their verdict was not tainted by, but is what induced, their fear of retaliation from the alleged victim's brother. *Gouveia*, 384 P.3d at 859–860.

The Hawaii Supreme Court's decision, holding that the petitioner's Fifth Amendment double jeopardy rights do not preclude a second trial, was contrary to and unreasonably applied clearly established federal double jeopardy law (most notably, *Evans* and the cases defining what an acquittal is and establishing that an acquittal is unreviewable and carries an absolute preclusive effect to further prosecution) and, while at it, was also based on an unreasonable determination of the facts (specifically, that the presumption of improper influence was not rebutted by the jury's actions and the sequence of those actions). Under the Fifth Amendment's double jeopardy clause, the jury's verdict acquitting the petitioner absolutely precludes his retrial.

5. **Conclusion.** The petitioner requests that this Court grant his Fifth Amendment double jeopardy claim and order that the State of Hawaii give effect to the jury's acquittal, enter judgment in accordance with that verdict, and dismiss Cr. No. 12-1-1474 with prejudice, and grant any other relief to which the petitioner is entitled.

DATED: Honolulu, Hawaii, January 18, 2017.

*/s/ P. C. Wolff*
PETER C. WOLFF, JR.
Attorney for Petitioner
Royce C. Gouveia

# CERTIFICATE OF SERVICE

I, PETER C. WOLFF, JR., hereby certify that on the date noted below, a true and correct copy of the foregoing was served on:

DOUGLAS CHIN
State of Hawaii Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii 96813

NOLAN ESPINDA
Department of Public Safety Director
State of Hawaii Department of Public Safety
919 Ala Moana Boulevard, 4th Floor
Honolulu, Hawaii 96814

KEITH M. KANESHIRO
Prosecuting Attorney for the City and County of Honolulu
Department of the Prosecuting Attorney
1060 Richards Street
Honolulu, Hawaii 96813

DATED: Honolulu, Hawaii, January 18, 2017.

_____
PETER C. WOLFF, JR.
Attorney for Petitioner
Royce C. Gouveia