

ORIGINAL

PETER C. WOLFF, JR. #2332
Federal Public Defender
District of Hawaii
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:  (808) 541-3545
E-Mail:     peter_wolff@fd.org

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 8 2017

at __10__ o'clock and __30__ min. __ M
SUE BEITIA, CLERK

Counsel for Petitioner
ROYCE C. GOUVEIA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROYCE C. GOUVEIA<br>Petitioner<br><br>v.<br><br>NOLAN ESPINDA, Director of the<br>Department of Public Safety for the<br>State of Hawaii; and DOUG CHIN,<br>Attorney General of the State of Hawaii<br>Respondents | No. CV 17  00021 SOM KJM<br><br>Petitioner's Excerpts of the State Court<br>Record; Certificate of Service |

**Petitioner's Excerpts of the State Court Record**

## Table of Contents

Page

1. Circuit Court's Jury Instructions (09/06/2013, 8:56 am). ............................ 1

2. Jury Communication No. 3 (09/06/2013, 2:20 pm) (misnumbered). .......... 32

3. Jury Communication No. 2 (09/06/2013, 2:24 pm) (misnumbered). .......... 34

4. Circuit Court's Findings of Fact, Conclusions of Law, and
   Order Granting State's Oral Motion for Mistrial Based on Manifest
   Necessity (10/22/2013). ............................................................. 36

5. Circuit Court's Order Denying Motion to Dismiss for Violation
   of Double Jeopardy (12/19/2013). .............................................. 42

6. Intermediate Court of Appeals Decision,
   *State v. Gouveia*, 348 P.3d 496, 2016 WL 2066780
   (Haw. Ct. App. 2015) (unpublished). ........................................... 44

7. Hawaii Supreme Court's Decision,
   *State v. Gouveia*, 384 P.3d 846, 2016 WL 6216145 (Haw. 2016). ............ 56

The jury's verdict form will be separately filed once obtained by petitioner's present counsel.

ORIGINAL

CAi
FIRST CIRCUIT COURT
STATE OF HAWAII
FILED
8:56 O'CLOCK a. M.
SEP - 6, 2013 , 20
23
Clerk, 4th Division

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | | |
|---|---|---|
| STATE OF HAWAI'I, | ) | **CR. NO. 12-1-1474** |
| | ) | |
| vs. | ) | |
| | ) | CHARGE(S): |
| **ROYCE C. GOUVEIA,** | ) | MANSLAUGHTER |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | INSTRUCTIONS GIVEN BY THE COURT |
| | ) | AND IN THE ORDER IN WHICH THEY |
| | ) | WERE READ TO THE JURY |

INSTRUCTIONS GIVEN BY THE COURT AND IN THE
ORDER IN WHICH THEY WERE READ TO THE JURY

- 1 -

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.01

### CONSIDER INSTRUCTIONS AS A WHOLE

The court will instruct you now concerning the law which you must follow in arriving at your verdict.

You are the exclusive judges of the facts of this case. However, you must follow these instructions even though you may have opinions to the contrary.

You must consider all of the instructions as a whole and consider each instruction in the light of all of the others. Do not single out any word, phrase, sentence or instruction and ignore the others. Do not give greater emphasis to any word, phrase, sentence or instruction simply because it is repeated in these instructions.

In the event that a statement or argument made by a lawyer contradicts or misstates these instructions, you must disregard that statement or argument and follow these instructions.

| Given by agreement | ✓ |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

1

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.02

### PRESUMPTION OF INNOCENCE; REASONABLE DOUBT

You must presume the defendant is innocent of the charge against him/her. This presumption remains with the defendant throughout the trial of the case, unless and until the prosecution proves the defendant guilty beyond a reasonable doubt.

The presumption of innocence is not a mere slogan but an essential part of the law that is binding upon you. It places upon the prosecution the duty of proving every material element of the offense charged against the defendant beyond a reasonable doubt.

You must not find the defendant guilty upon mere suspicion or upon evidence which only shows that the defendant is probably guilty. What the law requires before the defendant can be found guilty is not suspicion, not probabilities, but proof of the defendant's guilt beyond a reasonable doubt.

What is a reasonable doubt?

It is a doubt in your mind about the defendant's guilt which arises from the evidence presented or from the lack of evidence and which is based upon reason and common sense.

Each of you must decide, individually, whether there is or is not such a doubt in your mind after careful and impartial consideration of the evidence.

Be mindful, however, that a doubt which has no basis in the evidence presented, or the lack of evidence, or reasonable inferences therefrom, or a doubt which is based upon imagination, suspicion or mere speculation or guesswork is not a reasonable doubt.

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

What is proof beyond a reasonable doubt?

If, after consideration of the evidence and the law, you have a reasonable doubt of the defendant's guilt, then the prosecution has not proved the defendant's guilt beyond a reasonable doubt and it is your duty to find the defendant not guilty.

If, after consideration of the evidence and the law, you do not have a reasonable doubt of the defendant's guilt, then the prosecution has proved the defendant's guilt beyond a reasonable doubt and it is your duty to find the defendant guilty.

| Given by agreement | ✓ |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.03

### CONSIDER ONLY THE EVIDENCE

You must consider only the evidence which has been presented to you in this case and such inferences therefrom as may be justified by reason and common sense.

The indictment/complaint is a mere formal accusation, and it is not evidence of the defendant's guilt. You must not be influenced at all because the defendant has been charged with an offense(s).

Trial procedures are governed by rules. When an attorney believes that the rules require it, it is his or her duty to raise an objection. It is within the province of the trial judge to rule on such objections.

During the course of this trial you have heard counsel make objections. You must not consider objections raised by counsel in your deliberations.

Statements or remarks made by counsel are not evidence. You should consider their arguments to you, but you are not bound by their recollections or interpretations of the evidence. You must also disregard any remark I may have made, unless the remark was an instruction to you.

If I have said or done anything which has suggested to you that I am inclined to favor the claims or positions of either [any] party, or if any expression or statement of mine has seemed to indicate an opinion relating to which witnesses are, or are not, worthy of belief or what facts are or are not established or what inferences should be drawn therefrom, I instruct you to disregard it.

You must not be influenced by pity for the defendant or by passion or prejudice against the defendant. Both the prosecution and the defendant have a right to demand,

4

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

and they do demand and expect, that you will conscientiously and dispassionately

consider and weigh all of the evidence and follow these instructions, and that you will

reach a just verdict.

| Given by agreement | | |
|---|---|---|
| Given, as modified, by agreement | ✓ | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

5

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.04

### DISREGARD STRICKEN EVIDENCE

You must disregard entirely any matter which the court has ordered stricken.

| Given by agreement | ✓ | |
|---|---|---|
| Given, as modified, by agreement | | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

6

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.06

### STIPULATIONS

You must accept, as conclusively proved, any fact to which the parties have stipulated.

| Given by agreement | |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

8

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.07

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

[In addition to facts which counsel have stipulated to be true] [Facts which the court has taken judicial notice of]; there are two types of evidence -- direct evidence, such as the testimony of witnesses who assert actual knowledge of a fact, and circumstantial evidence, which permits a reasonable inference of the existence of another fact.

Facts may be proved by direct or circumstantial evidence, or by a combination of both direct evidence and circumstantial evidence.

| Given by agreement | |
|---|---|
| Given, as modified, by agreement | ✓ |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

9

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.08

### WEIGHT OF THE EVIDENCE

While you must consider all of the evidence in determining the facts in this case, this does not mean that you are bound to give every bit of evidence the same weight. You are the sole and exclusive judges of the effect and value of the evidence and of the credibility of the witnesses.

| Given by agreement | ✓ |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

<u>INSTRUCTION NO. 3.09</u>

CREDIBILITY AND WEIGHT OF TESTIMONY

It is your exclusive right to determine whether and to what extent a witness should be believed and to give weight to his or her testimony accordingly. In evaluating the weight and credibility of a witness's testimony, you may consider the witness's appearance and demeanor; the witness's manner of testifying; the witness's intelligence; the witness's candor or frankness, or lack thereof; the witness's interest, if any, in the result of this case; the witness's relation, if any, to a party; the witness's temper, feeling, or bias, if any has been shown; the witness's means and opportunity of acquiring information; the probability or improbability of the witness's testimony; the extent to which the witness is supported or contradicted by other evidence; the extent to which the witness has made contradictory statements, whether in trial or at other times; and all other circumstances surrounding the witness and bearing upon his or her credibility.

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

Inconsistencies or discrepancies in the testimony of a witness, or between the

testimony of different witnesses, may or may not cause you to discredit such testimony.

In weighing the effect of inconsistencies or discrepancies, whether they occur within one

witness's testimony or as between different witnesses, consider whether they concern

matters of importance or only matters of unimportant detail, and whether they result

from innocent error or deliberate falsehood.

| Given by agreement | ✓ | |
| Given, as modified, by agreement | | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.10

### REJECTING TESTIMONY

If you find that a witness has deliberately testified falsely to any important fact or deliberately exaggerated or suppressed any important fact, then you may reject the testimony of that witness except for those parts which you nevertheless believe to be true.

| Given by agreement | ✓ |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.11

### NUMBER OF WITNESSES

You are not bound to decide a fact one way or another just because more witnesses testify on one side than the other.  It is testimony that has a convincing force upon you that counts, and the testimony of even a single witness, if believed, can be sufficient to prove a fact.

| Given by agreement | | ✓ |
| --- | --- | --- |
| Given, as modified, by agreement | | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.12

### PROSECUTION NOT REQUIRED TO CALL ALL WITNESSES

The prosecution is not required to call as witnesses all persons who may have been present at any of the events disclosed by the evidence or who may appear to have some knowledge of these events, or to produce all objects or documents mentioned or suggested by the evidence.

| Given by agreement | |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.13

### DEFENDANT NOT REQUIRED TO CALL ANY WITNESSES

The defendant has no duty or obligation to call any witnesses or produce any evidence.

| Given by agreement | |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.15A

### DEFENDANT AS A WITNESS

The defendant in this case has testified. When a defendant testifies, his/her credibility is to be tested in the same manner as any other witness. The defendant has a constitutional right and a legal duty to be present throughout the trial and while other witnesses testify. You must not draw any unfavorable inference regarding the credibility of the defendant's testimony on the basis that he/she was present during the trial.

| Given by agreement | | |
|---|---|---|
| Given, as modified, by agreement | | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 4.03

### AVAILABILITY OF EXHIBITS DURING DELIBERATIONS

During the trial items were received into evidence as exhibits. These exhibits will be sent into the jury room with you when you begin to deliberate.

| Given by agreement | |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

20

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 8.01

### PENALTY OR PUNISHMENT NOT TO BE DISCUSSED

You must not discuss or consider the subject of penalty or punishment in your deliberations of this case.

| Given by agreement | | |
|---|---|---|
| Given, as modified, by agreement | | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

21
- 19 -

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 4.05

### EXPERT WITNESSES

During the trial you heard the testimony of ~~one or more~~ witnesses who ~~were~~ described as experts.

Training and experience may make a person an expert in a particular field. The law allows that person to state an opinion about matters in that field. Merely because such a witness has expressed an opinion does not mean, however, that you must accept this opinion. It is up to you to decide whether to accept this testimony and how much weight to give it. You must also decide whether the witness's opinions were based on sound reasons, judgment, and information.

| Given by agreement | | |
|---|---|---|
| Given, as modified, by agreement | | ✓ |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

22
- 20 -

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 3.16

### STATE OF MIND - PROOF BY CIRCUMSTANTIAL EVIDENCE

The state of mind with which a person commits an act such as ["intentionally"] ["knowingly"] or ["recklessly"] may be proved by circumstantial evidence. While witnesses may see and hear, and thus be able to give direct evidence of what a person does or fails to do, there can be no eye-witness account of the state of mind with which the acts are done or omitted. But what a person does or fails to do may or may not indicate the state of mind with which he/she does or refrains from doing an act.

| Given by agreement | | |
|---|---|---|
| Given, as modified, by agreement | | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | ✓ |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

24

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 6.04

### STATE OF MIND – RECKLESSLY

A person acts recklessly with respect to his conduct when he consciously

disregard a substantial and unjustifiable risk that ~~the person's conduct~~ *his conduct* is of the

specified nature.

A person acts recklessly with respect to attendant circumstances when he

consciously disregards a substantial and unjustifiable risk that such circumstances exist.

A person acts recklessly with respect to a result of his conduct when he

consciously disregards a substantial and unjustifiable risk that his conduct will cause

such a result.

A risk is substantial and unjustifiable if, considering the nature and purpose of the

person's conduct and the circumstances known to him, the disregard of the risk involves

a gross deviation from the standard of conduct that a law abiding person would observe

in the same situation.

| Given by agreement | | |
|---|---|---|
| Given, as modified, by agreement | | ✓ |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

25

STATE'S INSTRUCTION NO. 1

The Defendant, Royce Gouveia, is charged with the offense of Manslaughter.

A person commits the offense of Manslaughter if he recklessly causes the death of another person.

There are two material elements of the offense of Manslaughter, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1.     That on or about the 27th day of September 2012, to and including the 29th day of September 2012, in the City and County of Honolulu, ~~the~~ *State of Hawaii,* Defendant caused the death of *Albert Meyer* ~~another person~~; and

2.     That the Defendant did so recklessly.

*as modified by agreement*

| Given by agreement | |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of: | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

2

- 23 -

DEFENDANT'S REQUESTED INSTRUCTION NO. 2

Self-defense is a defense to the charges of Manslaughter, ~~and its included offense~~  Self defense involves consideration of two issues.  First, you must determine whether the defendant did or did not use "deadly force."  Second, you must determine whether the force used was justified.  The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified.  If the prosecution does not meet its burden, then you must find the defendant not guilty.

The first issue is:  Did the defendant use "deadly force?"

"Deadly force" means force which the defendant uses with the intent of causing, or which he knows to create a substantial risk of causing death or serious bodily injury.

"Force" means any bodily impact, restraint, or confinement, or the threat thereof.

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

If you determine that the defendant used "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Used."  If you determine that the defendant did not use "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Not Used."  You must then follow the law in the applicable section to determine the second issue, which is whether the force used by the defendant was justified.

(Insert "bodily injury" definition here)

- 24 -

## "Deadly Force Used"

The use of deadly force upon or toward another person is justified if the defendant reasonably believed that deadly force is immediately necessary to protect himself on the present occasion against death or serious bodily injury. The reasonableness of the defendant's belief that the use of protective deadly force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be when the deadly force was used.

The use of deadly force is not justifiable if the defendant, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter.

The use of deadly force is not justifiable if the defendant knows that he can avoid the necessity of using such force with complete safety by retreating, ~~but the defendant is not required to retreat from his own dwelling unless he was the initial aggressor. "Dwelling" means any building or structure, though movable or temporary, or a portion thereof, which is for the time being a home or place of lodging.~~

## "Deadly Force" Not Used

The use of force upon or toward another person is justified if the defendant reasonably believes that force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person. The reasonableness of the defendant's belief that the use of such

protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be. The defendant may estimate the necessity for the use of force under the circumstances as he reasonably believes them to be when the force is used, without retreating.

"Force" means any bodily impact, restraint, or confinement, or the threat thereof.

"Unlawful force" means force which is used without the consent of the person against whom it is directed and the use of which would constitute an unjustifiable use of deadly force or force. A person cannot consent to the infliction of death, serious bodily injury or substantial bodily injury.

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"Substantial bodily injury" means bodily injury which causes:

(1) A major avulsion, laceration, or penetration of the skin;

(2) A bone fracture; or

(3) A serious concussion.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

Self defense is not available for the offense of

Manslaughter if the prosecution proves that:

    (1) the defendant was reckless in believing that he was justified in using deadly force against the other person; or

    (2) the defendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justiciability of his use of deadly force against the other person.

| Given by agreement | | |
|---|---|---|
| Given, as modified, by agreement | | |
| Given over objection of | | Plaintiff |
| | | Defendant |
| Given, as modified, over objection of | | Plaintiff |
| | | Defendant ✓ |
| Refused over objection of | | Plaintiff |
| | | Defendant |
| Withdrawn | | |

Instruction No. 7.01A, Hawaii Pattern Jury Instructions-Criminal

- 27 -

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

### INSTRUCTION NO. 8.02A

### UNANIMOUS VERDICT

A verdict must represent the considered judgment of each juror, and in order to reach a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous.

Each of you must decide the case for yourself, but it is your duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violating your individual judgment. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest belief as to the weight or effect of evidence for the mere purpose of returning a verdict.

| Given by agreement | ✓ |
|---|---|
| Given, as modified, by agreement | |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 8.03

### CONDUCT OF DELIBERATIONS

Upon retiring to the jury room, elect one of your members as foreperson to preside over your deliberations and be your spokesperson in court.

The foreperson's duties are to keep order during the deliberations and to make sure that every juror who wants to speak is heard, to represent the jury in communications you wish to make to me, and to sign, date, and present the jury's verdict to me.

In deciding the verdict, all jurors are equal and the foreperson does not have any more power than any other juror.

You may take such time as you feel is necessary for your deliberations. You may inform the court if you have any questions about or do not understand the court's instructions.

When you reach a verdict, the foreperson is to sign and date the verdict, appropriate forms for which will be given to you.

Until you are through with your consideration of this case or you are otherwise excused by the court, it is necessary from this time that you remain together as a body. A bailiff will be sworn to attend you and take care of any personal problems you may have and see to your comfort.

If you need to communicate with the court, send a note through the bailiff. Please do not attempt to communicate with the court except in writing.

During the course of the trial, you have received all of the evidence you may consider to decide the case. You must not attempt to gather any information on your

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

own which you think might be helpful.  Do not engage in any outside reading on any matter having anything to do with this case.  Do not refer to dictionaries or other outside sources.  Do not visit any places mentioned in the case.  Do not in any other way try to learn about the case outside the courtroom.

During your recesses from deliberations, when you are released to go home in the evening, you must not discuss this case with anyone or permit anyone to discuss this case with you.  You must not read or listen to news accounts about this case, if there are any.

You must not discuss this case with any person other than your fellow jurors. You must not reveal to the court or to any other person how the jury stands, numerically or otherwise, until you have reached a unanimous verdict and it has been received by the court.

| Given by agreement | |
|---|---|
| Given, as modified, by agreement | ✓ |
| Given over objection of: | Plaintiff |
| | Defendant |
| Given, as modified, over objection of | Plaintiff |
| | Defendant |
| Refused over objection of: | Plaintiff |
| | Defendant |
| Withdrawn | |

Cr. No.: 1PC12-1-1474
STATE OF HAWAII vs. ROYCE GOUVEIA

## INSTRUCTION NO. 8.04

### FORM OF VERDICTS

You may bring in either one of the following verdicts:

    1.    Not guilty; or

    2.    Guilty as charged.

Your verdict must be unanimous.

After a verdict has been reached and your foreperson has signed and dated the verdict form, you will notify the bailiff, and court will be reconvened to receive the verdict.

| Given by agreement | | |
| --- | --- | --- |
| Given, as modified, by agreement | | |
| Given over objection of: | Plaintiff | |
| | Defendant | |
| Given, as modified, over objection of | Plaintiff | |
| | Defendant | ✓ |
| Refused over objection of: | Plaintiff | |
| | Defendant | |
| Withdrawn | | |

31
- 31 -

ORIGINAL

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED
2:20 o'clock P. M.
SEP - 6 2013 , 20
Lynn Y. Nozaki
Clerk, 4th Division

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | | |
|---|---|---|
| STATE OF HAWAI'I, | ) | CR. NO. 12-1-1474 |
| vs. | ) | |
| **ROYCE C. GOUVEIA,** | ) | CHARGE(S):<br>MANSLAUGHTER |
| Defendant. | ) | |
| | ) | **COMMUNICATION NO. 3 FROM THE JURY** |

COMMUNICATION NO. 3 FROM THE JURY

QUESTION: *We reached a verdict.*

_____

_____

_____

_____
FOREPERSON

DATE: *09-06-2013*   TIME: *1420*

- 32 -

**ANSWER:**

_____

Judge of the Above-Entitled Court

_____

Date                    Time

ORIGINAL

CAI

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2:24 o'clock P. M.
SEP - 6 2013 , 20
Lynn Y. Nozaki
Clerk, 4th Division

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| STATE OF HAWAI'I, | ) CR. NO. 12-1-1474 |
| vs. | ) |
| ROYCE C. GOUVEIA, | ) CHARGE(S): |
| | ) MANSLAUGHTER |
| Defendant. | ) |
| | ) |
| | ) COMMUNICATION NO. 2 FROM THE |
| | ) JURY |

## COMMUNICATION NO. 2 FROM THE JURY

QUESTION: *Concern: This morning on prosecutor's side of court room there was a man, shaved head, glaring and whistling at defendant. We have concern for our safety as jurors*

*[signature]*
FOREPERSON
DATE: 09-06 2013    TIME: 1434

- 34 -

**ANSWER:**

_____
Judge of the Above-Entitled Court

_____
     Date          Time

Page 2

**ORIGINAL**

KEITH M. KANESHIRO 2027
Prosecuting Attorney
KRISTINE YOO 7845
Deputy Prosecuting Attorney
City and County of Honolulu
1060 Richards Street, 10th Floor
Honolulu, Hawai'i 96813
Ph:   (808) 768-6408
FAX:   (808) 768-7513
Attorneys for State of Hawai'i

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2013 OCT 22 PM 1: 16

J. KUBO
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | | |
|---|---|---|
| STATE OF HAWAI'I | ) | CR. NO. 12-1-1474 |
| | ) | |
| v. | ) | MANSLAUGHTER |
| | ) | (§707-702(1)(a), H.R.S.) |
| ROYCE C. GOUVEIA, | ) | |
| | ) | FINDINGS OF FACT, CONCLUSIONS OF |
| Defendant. | ) | LAW AND ORDER GRANTING STATE'S |
| | ) | ORAL MOTION FOR MISTRIAL BASED |
| | ) | ON MANIFEST NECESSITY |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING STATE'S ORAL MOTION FOR MISTRIAL BASED ON MANIFEST NECESSITY

State of Hawaii's (hereinafter "State") oral motion for mistrial, having come on for

hearing on September 9, 2013, before the Honorable Glenn J. Kim, the State being represented

by Deputy Prosecuting Attorney Kristine Yoo, and Defendant Royce C. Gouveia ("Defendant")

being present and represented by Keith Shigetomi, Esq., and the Court having received evidence,

heard argument of counsel, and being fully advised in the premises, makes the following findings

of fact and conclusions of law:

4TH DIVISION

2013 OCT 11 AM 9:43

STATE OF HAWAII
1ST CIRCUIT COURT

- 36 -

## FINDINGS OF FACT

1. On October 4, 2012, Defendant was indicted for Manslaughter under CR 12-1-1474.

2. A jury trial commenced on September 3, 2013, and ended on September 6, 2013. The jury was given the case for deliberation at about 10:35 AM on September 6, 2013.

3. On September 6, 2013, while deliberating, the jury made the following three communications with the court:

   a. Communication No. 1 – the jury requested a "layman's explanation of 'reckless'";

   b. Communication No. 2 – the jury expressed concern for their safety;

      > "Concern: This morning on the prosecutor's side of courtroom there was a man, shaved head, glaring and whistling at defendant. We have concern for our safety as jurors."

   c. Communication No. 3 – the jury informed the court and counsel that a unanimous decision had been reached;

4. On September 6, 2013, Communication No. 2 and No. 3 were given to the Court at the same time. Communication No. 2 was dated and timed at 1424 hours, and Communication No. 3 was dated and timed at 1420 hours (out of order).

5. Based on Communication No. 2, both parties requested the court to individually voir dire the jurors regarding the communication.

6. All twelve jurors were individually questioned on September 6, 2013, and September 9, 2013, by both the Court and parties specifically about Communication No. 2. Special precautions were taken to ensure no juror revealed the verdict during the individual voir dire.

7. The Court questioned the jurors individually and both counsel for the State and for Defendant were given adequate opportunity to question each juror regarding Communication No. 2.

8. Four jurors witnessed an individual seated on the prosecutor's side of the courtroom whistling and/or glaring at Defendant ("incident") prior to commencing deliberation.

2

9. Seven of the jurors indicated discussion of the incident occurred before the verdict, ranging from within ten minutes of commencing deliberation to the end of deliberation. At least four of these seven jurors indicated discussion of the incident occurred at the beginning of deliberations, specifically that it was one of the first topics discussed.

10. During the discussion of the incident prior to verdict, the jurors who actually observed the incident communicated to the other jurors fear for their own safety.

11. Some of the juror answers regarding Communication No. 2 and the incident included the following:

   a. Some jurors were worried about retaliation;

   b. The unidentified male's look appeared hostile during the incident;

   c. Some jurors were concerned;

   d. Some jurors felt intimidated; and

   e. The incident impacted other jurors' decisions.

12. Although all twelve jurors indicated that neither the incident itself nor the discussion regarding the incident during the deliberations affected their own decision, at least one juror indicated that the incident appeared to have impacted the deliberation process and decision.

13. The incident was not part of the evidence in the case at hand.

14. The verdict was never taken for this case. At no point during the proceedings did the Court take, read or otherwise get any indication of the jury's verdict.

15. The Court finds that the jurors' statements that the incident did not affect their decision-making process and/or deliberations are not credible as evidenced by the plain language of Communication No. 2 and answers of the voir dire of each individual juror.

3

16. The Court further finds that the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt.

## CONCLUSIONS OF LAW

1. This issue is of first-impression. Although there is no specific juror misconduct, based on the facts and circumstances of the situation, the well-established "harmless beyond a reasonable doubt" standard is adopted.

2. "As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. The same principle is applied in the context of a motion for new trial premised on juror misconduct. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Furutani, 76 Hawai'i 172, 178-79, 873 P.2d 51, 57-58 (1994).

3. "The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution guarantee the criminally accused a fair trial by an impartial jury. If any juror was not impartial, a new trial must be granted. However, not all juror misconduct necessarily dictates the granting of a new trial. A new trial will not be granted if it can be shown that the jury *could not* have been influenced by the alleged misconduct." (*Emphasis added*) State v. Kim, 103 Hawai'i 285, 290-91, 81 P.3d 1200, 1205-06 (2003); *see* State v. Gabalis, 83 Hawai'i 40, 45, 924 P.2d 534, 539 (1996).

4. "Where the trial court does determine that such alleged deprivation is of a nature which could substantially prejudice the ... right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances

4

surrounding the alleged deprivation to determine its impact on jury impartiality. The

standard to be applied in overcoming such a presumption is that the alleged deprivation must

be proved harmless beyond a reasonable doubt." State v. Bailey, 126 Hawai'i 383, 400, 271

P.3d 1142, 1159 (2012); see Furutani, 76 Hawai'i at 177, 873 P.2d at 56.

5. Communication No. 2 raised the concern of the Court and both counsel that the incident may

have substantially prejudiced the right to a fair trial. After further investigating the totality of

circumstances surrounding Communication No. 2, the Court concluded at least some of the

jurors were not credible, although explicitly indicated they were not lying. The Court's

concern is that although all twelve jurors unanimously agreed to release Communication No.

2, no juror admitted that the incident affected their own decision making process.

Furthermore, reason and common sense dictates that the incident did have an effect on the

deliberations hence the impartiality of the jurors, which is not harmless beyond a reasonable

doubt

6. Communication No. 2 and the underlying incident could not be proven harmless beyond a

reasonable doubt.

7. "[T]he trial court must grant a motion for new trial if any member (or members) of the jury

was not impartial; failure to do so necessarily constitutes an abuse of discretion." State v

Sugiyama, 71 Hawai'i 389, 391, 791 P.2d 1266, 1267 (1990).

8. Under the totality of the circumstances in light of the plain language of Communication No.

2 and the voir dire of the individual jurors, the Court finds that the jury was not impartial in

their deliberation and decision-making process. Based on the foregoing, there is no other

remedy short of a mistrial to cure the issue at hand as neither a continuance nor a further jury

instruction would appropriately address the issue of an impartial jury and its subsequent

tainted verdict.

5

9. "Even in the absence of a defendant's express or implied consent to a mistrial, principles of double jeopardy pose no bar to reprosecution after discharge of a jury if there was a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. Manifest necessity is defined as a sudden and overwhelming emergency beyond [the] control of [the] court and unforeseeable[, under circumstances in which] it becomes no longer possible to conduct [the] trial or to reach a fair result based upon the evidence." State v. Quitog, 85 Hawai`i 128, 143, 938 P.2d 559, 574 (1997); State v. Minn, 79 Hawaii 461, 903 P.2d 1282 (1995).

10. The incident underlying Communication No. 2 was both beyond the court's control and unforeseeable. Accordingly, based on Communication No. 2, and the totality of the circumstances, there is manifest necessity for a mistrial.

## ORDER

ACCORDINGLY IT IS HEREBY ORDERED that the State's oral motion for mistrial based on manifest necessity be and the same is hereby granted.

Dated at Honolulu, Hawai`i: _____ OCT 2 2 2013 _____.

_signature_

THE HONORABLE GLENN J. KIM
Judge of the above entitled court

APPROVED AS TO FORM:

_signature_

KEITH SHIGETOMI, ESQ.
Attorney for Defendant

6

ORIGINAL

KEITH M. KANESHIRO  2027
Prosecuting Attorney
KRISTINE Y. YOO  7845
Deputy Prosecuting Attorney
City and County of Honolulu
Alii Place
1060 Richards Street, 10th Floor
Honolulu, Hawaii 96813
Ph:    768-6408
FAX:  768-7513
Attorneys for State of Hawaii

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2013 DEC 19  AM 9:00

A. MARPLE
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

STATE OF HAWAII                          )     CR. NO. 12-1-1474
                                         )
        v.                               )     MANSLAUGHTER
                                         )
ROYCE C. GOUVEIA,                        )
                                         )
                Defendant.               )     ORDER DENYING MOTION TO
                                         )     DISMISS FOR VIOLATION OF DOUBLE
                                         )     JEOPARDY
                                         )
                                         )
                                         )
                                         )
                                         )
                                         )
_____  )

ORDER DENYING MOTION TO DISMISS FOR VIOLATION OF DOUBLE JEOPARDY

Defendant's Motion to Dismiss for Violation of Double Jeopardy, having come on for hearing on December 4, 2013, before the Honorable Glenn J. Kim, the State being represented by Deputy Prosecuting Attorney Marissa N. Machida standing in for Deputy Prosecuting Attorney Kristine Y. Yoo and Defendant Gouveia being present and being represented by Keith Shigetomi, and the Court being fully advised in the premises and having orally denied said motion,

3449sl

- 42 -

IT IS HEREBY ORDERED that the aforesaid motion be and the same is hereby denied.

Dated at Honolulu, Hawaii: _____ DEC 1 9 2013 _____.

GLENN J. KIM
Judge of the above entitled court

APPROVED AS TO FORM:

Keith Shigetomi
Attorney for Defendant Gouveia

3449sl

2

- 43 -

135 Hawai'i 219
Unpublished Disposition
Unpublished disposition. See
HI R RAP Rule 35 before citing.
Intermediate Court of Appeals of Hawai'i.

STATE of Hawai'i, Plaintiff–Appellee,

v.

Royce C. GOUVEIA, Defendant–Appellant.

No. CAAP–14–0000358.
|
April 30, 2015.

Appeal from the Circuit Court of the First Circuit (CR. No. 12–1–1474).

**Attorneys and Law Firms**

Keith S. Shigetomi, for Defendant–Appellant.

Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff–Appellee.

FUJISE and GINOZA, JJ., with NAKAMURA, C.J., dissenting.

*MEMORANDUM OPINION*

**\*1** The jury submitted two notes: one announced that it had reached a verdict in the manslaughter case; the other expressed concern for the jurors' safety after observing a man, on the prosecutor's side of the courtroom, "glaring and whistling at defendant[.]" Without taking or reading the verdict, the trial court questioned the jurors about the note expressing concern for their safety. The jurors all indicated in their responses that the incident itself and their discussions concerning the incident did not affect their deliberations, but the trial court found that the jurors' responses on this point were not credible. Some jurors had testified that other jurors were worried about their safety, and one juror testified that other jurors' concern for their safety appeared to have an impact on those jurors' decisions. Over the defendant's objection, the trial court granted the prosecution's motion for mistrial based on "manifest necessity." Defendant subsequently moved to dismiss the indictment on double jeopardy grounds, which the trial court denied.

The question presented in this appeal is whether there was "manifest necessity" for the trial court's declaration of a mistrial, which would permit a retrial without violating the defendant's protection against double jeopardy. We hold that the trial court did not abuse its broad discretion in determining that manifest necessity existed for a mistrial, and therefore, retrial is not barred by double jeopardy. Accordingly, we affirm the trial court's "Order Denying Motion to Dismiss for Violation of Double Jeopardy."

BACKGROUND

Plaintiff–Appellee State of Hawai'i (State) charged Defendant–Appellant Royce C. Gouveia (Gouveia) with recklessly causing the death of Albert Meyer (Meyer), thereby committing the offense of Manslaughter, in violation of Hawaii Revised Statutes (HRS) § 707–702(1)(a) (Supp.2014).[1] The charge stemmed from an incident in which Gouveia struck Meyer, causing Meyer to fall and hit his head on the pavement, resulting in Meyer's death. The trial was held in the Circuit Court of the First Circuit Court (Circuit Court).[2]

The following evidence was presented at trial.

I.

A.

The State called Dash Kelly (Kelly) and Kevin Espino (Espino), who were friends of Meyer and were present during the incident that led to Meyer's death. On the evening of September 27, 2012, Meyer and Espino went to visit Kelly at Kelly's home. According to Kelly, while the three men were "talking story" outside, Gouveia drove up in a car. Kelly heard Meyer tell Gouveia to pull over so that he could "talk story." Gouveia got out of his car, met Meyer in the middle of the road, and they exchanged a few words. Then Meyer "got hit." Kelly did not actually see Gouveia hit Meyer, but Kelly heard a "hit kind of sound" and saw Gouveia's arm appear to be finishing a punching-type motion. Meyer fell "straight back[,]" "was out cold ... from the top of the fall [,]" and hit his head on the pavement. Kelly acknowledged that he "didn't see any threatening behavior on the part of [Gouveia]." Kelly

also acknowledged that he was "tweaking," i.e., "under the influence of ice" when he observed the incident.

**\*2** Kelly testified that after Meyer hit the pavement, Gouveia looked around, picked Meyer up from the back, and pulled him to the side of the road. Kelly then called the police, because "it was obvious that [Meyer] needed help."

Espino testified to a similar version of events leading up to Meyer's death. Espino also did not witness Gouveia actually hit Meyer, but only remembered hearing a "thud" and then seeing "somebody standing over another person ... laid out on the ground."

Meyer was taken to the hospital by ambulance and pronounced brain dead two days later. According to Dr. Masahiko Kobayashi (Dr. Kobayashi), the deputy medical examiner who performed the autopsy, Meyer's injuries were consistent with Meyer "falling down and slamming the back of his head against the pavement [.]" The "[c]ause of death was cranial cerebral injuries, and ... the injuries to the skull and brain were due to blunt force head trauma due to a fall."

### B.

Gouveia testified that Meyer was his friend and that they grew up together. However, an "incident" occurred between him and Meyer at Gouveia's father's house. According to Gouveia, Meyer offered an ice pipe to Gouveia's father and asked if he wanted to smoke. Gouveia did not appreciate this and told Meyer to leave. Meyer "seemed mad at me[,]" so Gouveia decided to stay away from him for a while.

On September 27, 2012, Gouveia was driving with two of his friends when he saw Meyer, Kelly, and Espino. Meyer told Gouveia to pull over, which Gouveia did "[t]o [t]alk story, see what's up." At first, Meyer "seemed normal," but as Meyer approached, Gouveia could tell that Meyer "was mad at me" and that he was glaring. Gouveia testified that Meyer said, "in a mad tone[,]" "hey, you fucka, why you tell me for leave that time?" Gouveia thought that Meyer was referring to the incident that had occurred at Gouviea's father's house and told Meyer that it was "because you went offer my dad ice." Meyer then pushed Gouveia, which made Gouveia "mad."

Gouveia testified that Meyer looked like he was high on drugs. Gouveia had regularly seen Meyer high on ice before, and when Meyer is "high on ice" "he gets aggressive" and "talks stupid." Gouveia became concerned that Meyer was about to attack and hit Gouveia. Gouveia explained, "that's why I went slap'em" in the face. Gouveia denied punching Meyer and said he did not want to hurt Meyer. Gouveia further explained that he slapped Meyer in the face "[t]o stop him[ ][f]rom hitting me[,] to "stun him" so that Meyer could "wake up and realize that this is me, this is your friend." Gouveia testified that he did not intend to hurt Meyer or cause him to fall.

Gouveia said that Meyer fell backwards and hit his head. Gouveia observed that Meyer was knocked out and was "shocked" and "panicked[,]" thinking Meyer was hurt. Gouveia then went to help Meyer by picking him up, pulling him out of the middle of the road, telling Espino to call 911, and trying to wake Meyer up by giving him water. Gouveia left the scene when he heard the sirens because he "got scared" and "wasn't thinking clearly."

### II.

### A.

**\*3** After the jury had deliberated for less than a day, the Circuit Court reconvened and notified the parties that it had received two communications from the jury. The first communication, signed at 2:20 p.m., stated: "We reached a verdict." The second communication, signed four minutes later, stated: "Concern. This morning on prosecutor's side of crtroom [sic] there was a man, shaved head, glaring and whistling at defendant. We have concern for our safety as jurors."

The Circuit Court initially indicated that it planned to take the verdict. However, after further discussion, the Circuit Court, with the agreement of counsel for both the State and Gouveia, decided to individually question the jurors about their safety concerns and its effect on their deliberations. The Circuit Court and the parties did not know what verdict the jury had reached.

State v. Gouveia, 135 Hawai'i 219 (2015)

348 P.3d 496

## B.

The Circuit Court and counsel proceeded to individually question the jurors, with the Circuit Court making it clear that the jurors should not disclose the verdict that had been reached. The jurors who had witnessed the incident described it as follows:

—Juror 7 stated:

> I was sitting there and I looked over as everyone was sitting down getting situated, and I saw a him [sic] in the second row sitting on the edge, larger build, he had white shirt and he was just making these really angry faces, and he wouldn't move from that spot, he wanted to make sure that—he was trying to get defendant's attention, whistling "whoo-whoo-whoo" demonstrating.

—Juror 4 noticed a man who appeared "hostile" and was "glaring" in a certain direction of the courtroom, but was not certain whether "he was glaring at the defendant or not[.]"

—Juror 6 saw a man "glaring at the defendant" and thought "he was trying to get his attention by whistling." Juror 6 thought that the man was part of the prosecutor's side.

—Juror 3 heard whistling that morning.

The jurors gave conflicting answers regarding when the incident was discussed. Most of the jurors stated that the incident was discussed before the verdict was reached, but a few stated that it was not discussed until after. The jurors who stated the incident was discussed before the verdict was reached differed on whether the incident was discussed at the beginning, middle, or end of the deliberations and on the amount of time they spent discussing the incident. The jurors indicated that some of the jurors, particularly the women, were worried about their safety, expressed concern about possible retaliation, and "felt slightly intimidated." Each of the jurors responded that the incident and any safety concern did not affect their own decision in the case. However, one juror stated that three or four other jurors participated in a conversation about the incident or said they saw the incident; that the jurors describing the incident sounded concerned, and she believed the conversation about the

incident appeared to have an impact on other jurors' decisions; and that concern for their safety impacted other jurors' decisions. The jurors generally agreed that the decision to send the communication to the Circuit Court regarding their safety concerns came after they had reached a verdict.

## III.

### A.

*4 The questioning of the jurors took place over a two day period. After it was completed, the Circuit Court asked defense counsel whether Gouveia wanted to move for a mistrial prior to taking the verdict. Defense counsel responded that Gouveia wanted to take the verdict and did not want to move for a mistrial. The State then moved for a mistrial based on manifest necessity.

In support of the State's motion, the deputy prosecutor argued that there were three jurors who indicated that the incident raising the jurors' safety concerns came up early in the deliberations, that one juror stated the discussion lasted for about ten minutes, and that another juror believed it had an impact on other jurors' decision or deliberation process. In addition, the deputy prosecutor pointed out that,

> this [case] did have an issue of first aggressor, and, you know, it's unclear whether what they saw in the gallery that they did associate with the prosecution and the decedent side, whether that had any impact on them as to whether they thought maybe it lended [sic] more credibility to Mr. Gouveia's testimony as he testified, again, considering things that are not—that were not presented as part of the evidence.

The deputy prosecutor argued that the verdict had been tainted by extraneous inappropriate circumstances and requested that the Circuit Court declare a mistrial based on manifest necessity.

348 P.3d 496

In response, defense counsel argued that the jurors were instructed by the court to make a decision solely based on the evidence, that jurors are presumed to follow instructions, and that every single juror stated that the discussion of the incident had no impact on his or her decision. Defense counsel asserted there was no "manifest necessity" to justify the declaration of a mistrial.

After considering counsel's arguments, the Circuit Court orally granted the State's motion for a mistrial and explained its reasoning as follows:

> Well, it's pretty clear to the court what everybody thinks the verdict is based on your arguments and your motions and lack of such. I don't know what the verdict is. I honestly literally don't know what the verdict is. There's no way I could know. We haven't taken the verdict yet. And, anyway, I think it's immaterial. I think it's literally immaterial to this discussion, this issue in my ruling here. And it's a really, really close ruling as far as I'm concerned. I think that's probably clear from what I've—you know, this discussion right now. I mean, really, it's difficult, very difficult, but of course nobody forced me.
>
> You know, the bottom line to me, and it's my decision, and as I say, [defense counsel], it could be proved wrong in the fullness of time, but I find it difficult, I really do, I find it difficult to really believe when I, you know, apply my reason and common sense to this that at least some of these jurors have this, what strikes me as a really serious concern for their personal safety and it came up according to, at least as I count, four or five of them, it came up, was one of the first things, one of the first things, one of the first topics of discussion when they got back in the room and started deliberating the case. Somebody brought it up and they started talking about it. It frankly beggars [sic] my reason and common sense that it would have no bearing on the deliberations in this case and therefore the verdict.
>
> *5 I'm going to grant the State's motion for mistrial. I'm going to find there's manifest necessity for such based on what I said and all the—and everything else that's been put on the record, including my questions to counsel.
>
> The verdict's going to be sealed for future purposes, if any, but obviously we're not going to take the verdict. I'm declaring a mistrial and I'm finding manifest

necessity for that, because I don't think there's anything short of a mistrial that's going—that can cure it. The verdict's tainted, in my view, based on my findings.

And to be explicit about it, as the finder of fact, I don't find it credible that all 12 of these people gave the answer they gave me about no impact on their decision, I think at least one, and probably more than one of them, probably the three or four women according to [Juror 9], and that's neither here nor there except he brought it up, who had these serious concerns about their safety. It really beggars [sic] my reason and common sense that it could not have had any impact on their deliberations and decision in this case.

(Emphasis added.)

### B.

On October 22, 2013, the Circuit Court filed its "Findings of Fact, Conclusions of Law and Order Granting State's Oral Motion for Mistrial Based on Manifest Necessity."

The Circuit Court made the following pertinent findings of fact (FOF):

7. The Court questioned the jurors individually and both counsel for the State and for Defendant were given adequate opportunity to question each juror regarding Communication No.2 [ (the communication expressing the jurors' safety concerns) ].

8. Four jurors witnessed an individual seated on the prosecutor's side of the courtroom whistling and/or glaring at Defendant ("incident") prior to commencing deliberation.

9. Seven of the jurors indicated discussion of the incident occurred before the verdict, ranging from within ten minutes of commencing deliberation to the end of deliberation. At least four of these seven jurors indicated discussion of the incident occurred at the beginning of deliberations, specifically that it was one of the first topics discussed.

10. During the discussion of the incident prior to verdict, the jurors who actually observed the incident communicated to the other jurors fear for their own safety.

11. Some of the juror answers regarding Communication No.2 and the incident included the following:

a. Some jurors were worried about retaliation;

b. The unidentified male's look appeared hostile during the incident;

c. Some jurors were concerned;

d. Some jurors felt intimidated; and

e. The incident impacted other jurors' decisions.

12. Although all twelve jurors indicated that neither the incident itself nor the discussion regarding the incident during the deliberations affected their own decision, at least one juror indicated that the incident appeared to have impacted the deliberation process and decision.

\*6 13. The incident was not part of the evidence in the case at hand.

14. The verdict was never taken for this case. At no point during the proceedings did the Court take, read or otherwise get any indication of the jury's verdict.

15. The Court finds that the jurors' statements that the incident did not affect their decision making process and/or deliberations are not credible as evidenced by the plain language of Communication No.2 and answers of the voir dire of each individual juror.

16. The Court further finds that the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt.

The Circuit Court made the following pertinent conclusions of law (COL):

3. "The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution guarantee the criminally accused a fair trial by an impartial jury. If any juror was not impartial, a new trial must be granted. However, not all juror misconduct necessarily dictates the granting of a new trial. A new trial will not be granted if it can

be shown that the jury could not have been influenced by the alleged misconduct." (Emphasis added) *State v. Kim*, 103 Hawai'i 285, 290–91, 81 P.3d 1200, 1205–06 (2003); *see State v. Gabalis*, 83 Hawai'i 40, 45, 924 P.2d 534, 539 (1996).

4. "Where the trial court does determine that such alleged deprivation is of a nature which could substantially prejudice the .... right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality. The standard to be applied in overcoming such a presumption is that the alleged deprivation must be proved harmless beyond a reasonable doubt." *State v. Bailey*, 126 Hawai'i 383, 400, 271 P.3d 1142, 1159 (2012); *see Furutani*, 76 Hawai'i at 177, 873 P.2d at 56.

5. Communication No.2 raised the concern of the Court and both counsel that the incident may have substantially prejudiced the right to a fair trial. After further investigating the totality of circumstances surrounding Communication No.2, the Court concluded at least some of the jurors were not credible, although explicitly indicated they were not lying. The Court's concern is that although all twelve jurors unanimously agreed to release Communication No. 2, no juror admitted that the incident affected their own decision making process. Furthermore, reason and common sense dictates that the incident did have an effect on the deliberations hence the impartiality of the jurors, which is not harmless beyond a reasonable doubt[.]

6. Communication No.2 and the underlying incident could not be proven harmless beyond a reasonable doubt.

\*7 7. "[T]he trial court must grant a motion for new trial if any member (or members) of the jury was not impartial; failure to do so necessarily constitutes an abuse of discretion." *State v. Sugiyama*, 71 Hawai'i 389, 391, 791 P.2d 1266, 1267 (1990).

8. Under the totality of the circumstances in light of the plain language of Communication No. 2 and the voir dire of the individual jurors, the Court finds that the jury was not impartial in their deliberation and decision-making process. Based on the foregoing,

there is no other remedy short of a mistrial to cure the issue at hand as neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict.

9. "Even in the absence of a defendant's express or implied consent to a mistrial, principles of double jeopardy pose no bar to reprosecution after discharge of a jury if there was a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. Manifest necessity is defined as a sudden and overwhelming emergency beyond [the] control of [the] court and unforeseeable[, under circumstances in which] it becomes no longer possible to conduct [the] trial or to reach a fair result based upon the evidence." *State v. Quitog,* 85 Hawai'i 128, 143, 938 P.2d 559, 574 (1997); *State v. Minn,* 79 Hawai'i 461, 903 P.2d 1282 (1995).

10. The incident underlying Communication No.2 was both beyond the court's control and unforeseeable. Accordingly, based on Communication No.2, and the totality of the circumstances, there is manifest necessity for a mistrial.

(Some bracketed material added.)

## IV.

Gouveia subsequently moved for an order dismissing the indictment on double jeopardy grounds. The Circuit Court denied the motion and on December 19, 2013, issued its "Order Denying Motion to Dismiss for Violation of Double Jeopardy." This appeal followed. For purposes of the appeal, this court unsealed the verdict. The verdict was not guilty.

## DISCUSSION

On appeal, Gouveia argues that (1) the Circuit Court abused its discretion in declaring a mistrial because "manifest necessity" was not present in the instant case; and (2) reprosecution is barred by double jeopardy. As explained below, we disagree.

## I.

The Double Jeopardy clause of the Fifth Amendment protects a defendant from being tried multiple times for the same criminal offense and is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969). The Hawai'i Constitution provides double jeopardy protection against multiple trials through an analogous clause. *See* Haw. Const. art. I, § 10. Jeopardy attaches when the jury is empaneled and sworn. *State v. Moriwake,* 65 Haw. 47, 51, 647 P.2d 705, 709 (1982).

When a trial is terminated over the objection of the defendant, the test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard. *Arizona v. Washington,* 434 U.S. 497, 504 (1978). "A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where the defendant consented to the mistrial <u>or there was manifest necessity for the mistrial.</u>" *State v. Wilmer,* 97 Hawai'i 238, 242–43, 35 P.3d 755, 759–60 (2001) (emphasis added). As explained by the United States Supreme Court,

> **\*8** [b]ecause of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

*Washington,* 434 U.S. at 505.

"Manifest necessity is defined as circumstances in which it becomes no longer possible to conduct the trial or to reach a fair result based upon the evidence." *Wilmer,* 97 Hawai'i at 244, 35 P.3d at 761(citation, internal quotation marks, and ellipsis omitted). With respect to a trial court's decision regarding the existence of manifest necessity and appellate review of such decision, the Hawai'i Supreme Court has stated:

There are especially compelling reasons for allowing a trial judge to exercise broad discretion in deciding whether or not manifest necessity exists. Thus, great deference will be given to the trial court when it finds manifest necessity. Because manifest necessity is a high standard not to be declared lightly, a trial judge should record his or her reasons for declaring a mistrial and include the reasons for finding manifest necessity.

*State v. Quitog,* 85 Hawaii 128, 143, 938 P.2d 559, 574 (1997) (format altered; emphasis added) (quoting *State v. Lam,* 75 Haw. 195, 205, 857 P.2d 585, 591 (1993)). When examining the record for evidence of manifest necessity, we must determine whether the trial court sufficiently considered less severe alternatives available, balancing the defendant's rights against the public interest. *State v. Minn,* 79 Hawai'i 461, 465, 903 P.2d 1282, 1286 (1995).

## II.

In *State v. Napulou,* 85 Hawai'i 49, 936 P.2d 1297 (App.1997), this court addressed a situation similar to the instant case and articulated a procedure that the trial court should follow in deciding whether to declare a mistrial based on possible juror tainting by outside influences. In *Napulou,* on the second day of jury deliberations, the court received a communication written by two of the jurors, which read as follows:

> Some jurors have noticed members of Napulou's family following them downstairs and toward the car garage. If a guilty verdict is given, could there be danger to some of us or has some arrangement been made for protection. (More than one juror)

*Napulou,* 85 Hawai'i at 51–52, 936 P.2d at 1299–1300 (brackets omitted).

The court then conducted a voir dire of each juror to determine whether, among other things, "the incidents and/or the discussion affected the ability of any juror to be fair and impartial, and whether the jurors could consider only the evidence and the law and deliberate fully and fairly." *Id.* at 52, 936 P.2d at 1300. All of the jurors responded that they could continue to deliberate on the evidence fairly and impartially, and the trial court found the jurors to be credible. *Id.* at 54, 56, 936 P.2d at 1302, 1304. Nevertheless, defense counsel moved for a mistrial, which the trial court denied. *Id.* at 54, 936 P.2d at 1302. The jury subsequently found Napulou guilty of attempted second-degree murder and other offenses. *Id.* at 51, 936 P.2d at 1299.

*9 On appeal, Napulou argued that

> because one or more jurors improperly commented or implied that Napulou's family members might have followed them to the parking area, or that Napulou's family might pose a danger to jurors if they found Napulou guilty, the jury was tainted, resulting in substantial prejudice to Napulou's right to a fair and impartial jury.

*Id.* at 55, 936 P.2d at 1303. Napulou further argued that the jurors' responses when questioned about the communication suggested that one or more jurors was lying or concealing information about matters raised in the communication, and that such jurors could be equally dishonest about remaining fair and impartial. *Id.*

In evaluating Napulou's claims, this court stated that when a trial court learns that the jury has been exposed to an outside influence that might jeopardize a defendant's right to a fair trial, "the initial step for the trial court to take ... is to determine whether the nature of the [outside influence] rises to the level of being substantially prejudicial." *Id.* at 55, 936 P.2d at 1303(citation omitted and block formate altered). We further stated:

> Where the trial court does determine that such influence is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality

- 50 -

of circumstances surrounding the outside influence to determine its impact on jury impartiality. The standard to be applied in overcoming such a presumption is that the outside influence on the jury must be proven harmless beyond a reasonable doubt. The trial court, in its investigation of the totality of circumstances, should include individual examination of potentially tainted jurors, outside the presence of the other jurors, to determine the influence, if any, of the extraneous matters.

*Id.* at 55–56, 936 P.2d at 1303–04.

We concluded that the trial court had proceeded properly when confronted with the jury's communication and that its findings were not clearly erroneous. *Id.* at 56, 936 P.2d at 1304. We stated that "[t]he trial judge, as the trier of fact, was empowered to assess the credibility of the jurors." *Id.* We further stated that the record supported the conclusion that the jurors' concerns were in the abstract rather than the specific, that the panel could serve as impartial jurors, and that the effect of any jurors' improper comments was harmless beyond a reasonable doubt. *Id.* Accordingly, we held the trial court did not abuse its discretion in denying Napulou's motion for a mistrial. *Id.*

## III.

In the instant case, both parties agree that the Circuit Court undertook the proper procedure[3] when it individually questioned each juror regarding Communication No. 2. Based on this questioning, the Circuit Court found:

9. Seven of the jurors indicated discussion of the incident occurred before the verdict, ranging from within ten minutes of commencing deliberation to the end of deliberation. At least four of these seven jurors indicated discussion of the incident occurred at the beginning of deliberations, specifically that it was one of the first topics discussed.

*10 10. During the discussion of the incident prior to verdict, the jurors who actually observed the incident communicated to the other jurors fear for their own safety.

11. Some of the juror answers regarding Communication No. 2 and the incident included the following:

a. Some jurors were worried about retaliation;

b. The unidentified male's look appeared hostile during the incident;

c. Some jurors were concerned;

d. Some jurors felt intimidated; and

e. The incident impacted other jurors' decisions.
Gouveia did not challenge these findings on appeal and they are therefore binding on this court. *See Bremer v. Weeks,* 104 Hawai'i 43, 63, 85 P.3d 150, 170 (2004). In any event, there was substantial evidence in the record to support these findings, and we conclude that they are not clearly erroneous.

The focus of Gouveia's appeal is his challenge to the Circuit Court's finding that the jurors' statements that the incident did not affect their decisionmaking process and/ or their deliberations were not credible. Gouveia contends that "[a]ll twelve jurors informed the trial court that his or her individual decision was not influenced by the incident in court or the discussion of it. There was no evidence to the contrary."

The Circuit Court, as the trier of fact on this issue, "was empowered to assess the credibility of the jurors." *See Napulou,* 85 Hawai'i at 56, 936 P.2d at 1304. The Circuit Court found:

12. Although all twelve jurors indicated that neither the incident itself nor the discussion regarding the incident during the deliberations affected their own decision, at least one juror indicated that the incident appeared to have impacted the deliberation process and decision.[4]

....

Case 1:17-cv-00021-SOM-KJM  Document 3  Filed 01/18/17  Page 54 of 72  PageID #: 76
State v. Gouveia, 135 Hawai'i 219 (2015)
348 P.3d 496

15. The Court finds that the jurors' statements that the incident did not affect their decisionmaking process and/or deliberations are not credible as evidenced by the plain language of Communication No. 2 and answers of the voir dire of each individual juror.

"An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." *State v. Barros*, 105 Hawai'i 160, 170, 95 P.3d 14, 24 (App.2004) (citation and internal quotation marks omitted). Having presided over the trial and the questioning of the jurors, the Circuit Court was in a better position than this court to assess the credibility of the jurors, understand the dynamics of the trial process in this case, and evaluate the effect that the external incident had on the jurors' deliberations. *See Quitog*, 85 Hawai'i at 143, 938 P.2d at 574 ("There are especially compelling reasons for allowing a trial judge to exercise broad discretion in deciding whether or not manifest necessity exists.") (citation omitted). In light of the Circuit Court's credibility findings, which we decline to overturn, and under the circumstances presented in this case, we cannot say that the Circuit Court abused its broad discretion in determining that manifest necessity existed for a mistrial. *Id.*[5]

## IV.

**\*11** Gouveia argues that the Circuit Court erroneously denied his motion to dismiss the indictment, which he sought on double jeopardy grounds. This argument fails in light of our conclusion that the Circuit Court did not abuse its discretion in finding manifest necessity for a mistrial. When a trial court declares a mistrial that is supported by a proper finding of manifest necessity, "retrial is not barred by the defendant's right against double jeopardy[.]" *Wilmer*, 97 Hawai'i at 242–43, 35 P.3d at 759–60.

## CONCLUSION

For the foregoing reasons, we affirm the Circuit Court of the First Circuit's "Order Denying Motion to Dismiss for Violation of Double Jeopardy."

Dissenting Opinion by NAKAMURA, C.J.

**\*11** I respectfully dissent. In my view, the Circuit Court of the First Circuit (Circuit Court) abused its discretion in concluding that manifest necessity existed for a mistrial. Accordingly, I would hold that the retrial of Defendant–Appellant Royce C. Gouveia (Gouveia) is barred by the protection against double jeopardy.

### I.

The Circuit Court received two communications from the jury after the jury had completed its deliberations. The first communication informed the Circuit Court that the jury had reached a verdict. The second communication, signed four minutes later, stated: "Concern. This morning on prosecutor's side of crtroom [sic] there was a man, shaved head, glaring and whistling at defendant. We have concern for our safety as jurors."

It is clear that the jurors knew what their verdict was when they submitted the second communication expressing concern for their safety as jurors. This is confirmed by the time on the second communication, which is four minutes after the time on the communication announcing that the jurors had reached a verdict. It is further confirmed by the jurors' testimony, in which they acknowledged that the decision to send the second communication expressing concern for their safety came after the verdict was reached.

The second communication revealed that the jurors' safety concerns stemmed from a man displaying a hostile attitude toward Gouveia. It referred to the man as being on the "prosecutor's side" of the courtroom and "glaring and whistling" at Gouveia. The jurors' view that the man was hostile to Gouveia was confirmed by the jurors' testimony, which described the incident as involving a man displaying an angry and hostile attitude toward Gouveia.

### II.

The jurors' expression of concern for their safety based on a man displaying a hostile attitude toward Gouveia raised the possibility of prejudice to Gouveia. The jury might have been influenced to find Gouveia guilty to avoid possible retaliation by a man hostile to Gouveia.

Case 1:17-cv-00021-SOM-KJM   Document 3   Filed 01/18/17   Page 55 of 72   PageID #: 77
State v. Gouveia, 135 Hawai'i 219 (2015)
348 P.3d 496

The sequence of the communications, however, strongly indicated that the incident had not adversely affected Gouveia. The jury's decision to submit the second communication came after the verdict had been reached, which showed that their safety concerns persisted after they had reached a verdict. The jurors' expression of post-verdict concern for their safety would logically mean that they had acquitted Gouveia—why else would the jurors have concern for their safety as the result of a man who was hostile to Gouveia?

*12 In any event, after the questioning of the jurors was completed, Gouveia informed the Circuit Court that he did not want a mistrial and that he wanted the Circuit Court to take the verdict. Accordingly, Gouveia waived any prejudice resulting from the incident and any claim of error arising from the failure to declare a mistrial.

### III.

The incident also raised the possibility of prejudice to the prosecution. As the prosecutor argued, the jury associated the man in the gallery with the prosecution and decedent's side and could have viewed the man's aggressive behavior as supporting Gouveia's self-defense claim that the decedent had been the first aggressor. However, the Circuit Court's findings and statements on the record show that it did not base its decision on possible prejudice to the prosecution. The Circuit Court's decision to declare a mistrial was based on its finding that "the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present[,]" and not on any prejudice to the prosecution's efforts to negate Gouveia's claim of self-defense.

Indeed, the Circuit Court's statements on the record demonstrate that it did not render its decision based on possible prejudice to the prosecution, but rather viewed the jurors' expression of concern for their safety due to the incident as requiring a mistrial *per se*. When the prosecutor initially attempted to argue that the incident may have prejudiced the prosecution with respect to Gouveia's self-defense claim, the Circuit Court made clear that it was not relying on this argument:

THE COURT: Yeah. Okay. All right. So how does that [ (the incident) ] taint the verdict, Ms. [prosecutor]? Spell it out for me. Let's make a complete record.

[PROSECUTOR]: Well, your honor, in this case it's an issue of self defense and first aggressor and there were testimony that the—

THE COURT: Doesn't matter, I mean, does it even matter what the facts or what's in dispute? <u>Isn't it— don't you think it's per se an inappropriate extraneous circumstance that if the jurors have concerns for personal safety based on something they observed in the courtroom being done by somebody in the gallery, that if it entered their discussions and had an impact on any of them, that it would taint the verdict?</u>

[PROSECUTOR]: Yes, your honor. I'm sorry, I thought the court was asking how it would play in with the facts. But, yes, that is correct, your honor.

(Emphasis added.)

### IV.

The record shows that the Circuit Court's finding of manifest necessity was not based on its determination of possible prejudice from the incident to the prosecution. Instead, the record shows that the Circuit Court assumed that the jurors' expression of concern for their personal safety due to the incident necessarily established, on a *per se* basis, manifest necessity for a mistrial and that the verdict was tainted.

*13 In my view, this assumption was incorrect. The jurors' expression of concern for their personal safety due to the incident did not automatically or necessarily mean that the jurors would be incapable of rendering a fair and impartial decision. *See State v.. Napulou,* 85 Hawai'i 49, 56, 936 P.2d 1297, 1304 (App.1997) (upholding the trial court's denial of a motion for mistrial that was made after jurors expressed concern for their safety). It would appear that jurors' concern for their safety due to an external incident is an issue that frequently arises in criminal trials, and yet a mistrial is not the mandated remedy in every case. *See United States v. Allen,* 736 F.Supp. 914, 922 (N.D.Ill.1990) (noting that few criminal trials could be successfully competed if the potential for an implicitly

threatening atmosphere or a single threat created an irrebuttable presumption that the jury was prejudiced).

I believe the Circuit Court's finding of manifest necessity was based on its erroneous view that such finding was *per se* required as the result of the jurors' expression of concern for their safety. I also believe that the circumstances surrounding the incident and the jurors' expression of concern for their safety did not prevent the jury from being able to reach "a fair result based upon the evidence" and did not demonstrate manifest necessity for a mistrial. *State v. Wilmer,* 97 Hawai'i 238, 244, 35 P.3d 755, 761 (2001) (internal quotation marks and citation omitted). [1]

In my view, the Circuit Court abused its discretion and erred in finding manifest necessity, granting the mistrial, and denying Gouveia's motion to bar continued prosecution on double jeopardy grounds. I would hold that Gouveia's retrial is barred by the protection against double jeopardy.

**All Citations**

135 Hawai'i 219, 348 P.3d 496 (Table), 2015 WL 2066780

Footnotes

1      HRS § 707–702(1)(a) provides in relevant part that "[a] person commits the offense of manslaughter if ... [t]he person recklessly causes the death of another person[.]" (Formatting altered.)

2      The Honorable Glenn J. Kim presided.

3      Although not raised by either party, we note that Hawaii Rules of Evidence (HRE) Rule 606(b) provides:

       (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may the juror's affidavit or evidence of any statement by the juror indicating an effect of this kind be received.

       However, even if the Circuit Court should not have permitted the jurors to be questioned, and should not have considered their testimony, about whether the incident affected their decision under HRE Rule 606(b), Gouveia did not object to this questioning or the Circuit Court's consideration of the jurors' testimony regarding whether the incident affected their decision. Indeed, in the Circuit Court and on appeal, Gouveia relies on the jurors' testimony that the incident did not affect their own decision as the basis for arguing that the Circuit Court erred in determining that there was manifest necessity for a mistrial. We therefore conclude that Gouveia has waived any claim of error based on HRE Rule 606(b).

4      The record reflects that in response to questioning, Juror 11 specifically stated that the jurors describing the incident sounded concerned, and she believed that this concern for their safety impacted their decision.

5      With respect to whether options less severe than a mistrial were available, the Circuit Court concluded that "neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict." Although Gouveia asserts that the Circuit Court erred in granting a mistrial, he did not argue in the Circuit Court, and does not argue on appeal, that the Circuit Court erred in failing to consider options less severe than a mistrial. We have no basis for concluding that the Circuit Court erred in failing to use options less severe than a mistrial.

1      As the majority indicates, it appears that under Hawai'i Rules of Evidence (HRE) Rule 606(b) (1993), the Circuit Court should not have permitted the jurors to be questioned, and should not have considered their testimony, about whether the incident affected their decision. With respect to inquiry into the validity of a verdict, the Hawai'i Supreme Court has construed HRE Rule 606(b) to mean that "the court 'cannot consider the jurors' testimony as to the effect of the [outside influence] upon them.' The court 'can only consider whether such [outside influence was present], and whether, given that [outside influence], ... [the defendant] had a trial before an impartial jury.' " *State v. Kim,* 103 Hawai'i 285, 291, 81 P.3d 1200, 1206 (2003) (citations omitted).

       However, as the majority notes, Gouveia has waived any claim of error based on HRE Rule 606(b). Moreover, the record indicates that the Circuit Court would have reached the same decision under the limitations imposed by HRE Rule 606(b). Therefore, I do not consider HRE Rule 606(b) in my analysis of whether the Circuit Court abused its discretion in concluding that manifest necessity existed for a mistrial.

State v. Gouveia, 135 Hawai'i 219 (2015)

348 P.3d 496

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.

139 Hawai'i 70
Supreme Court of Hawai'i.

State of Hawai'i, Respondent/Plaintiff–Appellee,

v.

Royce C. Gouveia, Petitioner/Defendant–Appellant.

SCWC–14–0000358
|
OCTOBER 25, 2016

### Synopsis

**Background:** Defendant, who was charged with manslaughter, moved to dismiss declaration of mistrial based on jurors' concerns about their safety. The Circuit Court, First Circuit, Glenn J. Kim, J., denied motion. Defendant appealed. The Intermediate Court of Appeals, 2015 WL 2066780, affirmed. Defendant's application for writ of certiorari was accepted.

**Holdings:** The Supreme Court, Recktenwald, C.J., held that:

[1] Circuit Court did not rely on improper juror testimony, concerning the effect that jurors' concerns about their safety due to man in courtroom glaring at defendant had on the verdict, when it concluded that manifest necessity existed for mistrial;

[2] presumption of prejudice, which arose from jurors' concerns about their safety, was not rebutted beyond reasonable doubt; and

[3] no reasonable alternative to mistrial would have eliminated potential of prejudice resulting from jurors' concerns for their safety, and thus, manifest necessity existed for mistrial, such that retrial of defendant would not violate double jeopardy.

Affirmed.

Nakayama, J., filed dissenting opinion.

**\*848** CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS (CAAP–14–0000358; CR. NO. 12–1–1474)

### Attorneys and Law Firms

Keith S. Shigetomi, Honolulu, for petitioner.

Donn Fudo, Honolulu, for respondent.

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J., DISSENTING

### Opinion

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case requires us to determine whether the trial court erred in declaring a mistrial based on jurors' concerns about their safety. Defendant Royce Gouveia was charged with manslaughter and tried before the Circuit Court of the First Circuit. [1] After deliberating, the jurors sent several notes to the court. The first note stated: "We reached a verdict." Another note expressed concern for their safety because a man on the prosecutor's side of the courtroom had been "glaring and whistling at [Gouveia]." The circuit court conducted voir dire of the jurors to determine what, if any, effect the incident had on them. The circuit court then declared a mistrial based on manifest necessity. Gouveia subsequently filed a motion to dismiss, asserting that the circuit court's finding of manifest necessity and declaration of a mistrial was erroneous, and that further prosecution was prohibited on double jeopardy grounds. The circuit court denied the motion.

Gouveia appealed the denial of his motion to dismiss to the Intermediate Court of Appeals (ICA). The ICA affirmed the circuit court, State v. Gouveia, CAAP–14–358, 2015 WL 2066780 (App. Apr. 30, 2015) (mem.), and Gouveia then petitioned this court to review the ICA's judgment.

We conclude that the circuit court did not abuse its discretion in concluding that there was manifest necessity for a mistrial because the presumption of prejudice was not overcome beyond a reasonable doubt. Accordingly, the ICA's June 4, 2015 judgment on appeal is affirmed.

### I. Background

On September 25, 2012, an altercation occurred in which Gouveia struck Albert Meyer, causing Meyer to fall and hit his head on the pavement. Meyer was taken to the hospital by ambulance and pronounced brain dead two days later. Gouveia was arrested and charged with manslaughter for recklessly causing the death of Meyer in violation of **849** Hawai'i Revised Statutes (HRS) § 707–702(1)(a).

On the afternoon of June 6, 2013, the same day the State and Gouveia made their closing arguments in Gouveia's trial, the jury sent two simultaneous communications to the circuit court. Communication No. 3, signed at 2:20 p.m., stated: "We reached a verdict." Communication No. 2, signed four minutes later, stated: "Concern. This morning on prosecutor's side of courtroom there was a man, shaved head, glaring and whistling at defendant. We have concern for onr safety as jurors."

The circuit court told the State and Gouveia, "My intention, unless counsel ... can persuade me otherwise, is just to take no action on this [.]" However, both counsel agreed that the court should question the jurors "[a]s to its effect, if any, on their deliberations and their verdict[.]" The circuit court then determined that, before opening the verdict, it would allow counsel to voir dire the jurors individually and would also ask questions directly.

Before questioning the jurors, the circuit court asked counsel whether they knew anything about the occurrence to which Communication No. 2 referred. Defense counsel stated that he was not aware of anything that had happened. The Deputy Prosecuting Attorney (DPA) stated that she did not see anything, but was aware that Meyer's brother had been in the courtroom that morning, was "pretty upset," and had a shaved head.

### A. Questioning of the Jurors Regarding Communication No. 2

The circuit court questioned all twelve jurors individually. Four jurors stated that they witnessed an individual seated on the prosecutor's side of the courtroom whistling and/or glaring at Gouveia. The incident was brought up in the jury room, where some of the jurors who observed the incident stated that they "were a little bit scared." When Juror No. 4 was asked by the court, "So I take it you have concern for your safety," she replied, "Yes."

Seven jurors indicated that the discussion of the incident occurred before the verdict, ranging from within ten minutes of commencing deliberation to the end of deliberation. At least four of these jurors indicated that the discussion occurred at the beginning of deliberations and that it was one of the first topics discussed. All twelve jurors stated that neither the incident itself nor the discussions of it affected their own decision, but when Juror No. 11 was asked if the incident "appear[ed] to have an impact on other people's decision [,]" she replied that "[i]t did."

### B. The State Moves for a Mistrial

After all of the jurors had been questioned, the circuit court asked both the State and Gouveia if they wanted the court to take any further action. Gouveia said no, but the State moved for a mistrial.

The State argued there was a manifest necessity to declare a mistrial because the topic of the man glaring and whistling at Gouveia had come up during deliberations, no one had remarked that it was an improper topic for the jury to consider, and, based on the statement made by Juror No. 11, the topic had seemed to influence the other jurors. The State noted that approximately five of the jurors had said that the topic of the incident came up during deliberations, i.e., before the jury had reached its verdict. Thus, according to the State, the verdict was "tainted."

The State also argued that it was important that at least three jurors said the topic of the incident came up at the beginning of the deliberations because, along with the fact that the jurors decided to write a communication to the court after reaching a verdict, it implied that it was important to some of the jurors.

Gouveia argued that because the court bad instructed the jurors that they had to decide the case based solely on the evidence presented, and each of the jurors said that the discussion did not impact their decision, there was no manifest necessity.

The circuit court determined that it was required to look at the totality of the circumstances and find beyond a reasonable doubt that the jurors' concern for their personal safety had no impact on any of the twelve **850** jurors' decisions. If it could not find that beyond a

reasonable doubt, then there would be manifest necessity requiring a mistrial.

The circuit court then orally granted the State's motion for mistrial:

> [W]hen I ... apply my reason and common sense to this that at least some of these jurors have ... what strikes me as a really serious concern for their personal safety and it came up according to, at least as I count, four or five of them, it [was] ... one of the first topics of discussion when they got back in the room and started deliberating the case. Somebody brought it up and they started talking about it. It frankly beggars my reason and common sense that it would have no bearing on the deliberations in this case and therefore the verdict.

> I'm going to grant the State's motion for mistrial. I'm going to find there's manifest necessity for such based on what I said ... and everything else that's been put on the record, including my questions to counsel.

> The verdict's going to be sealed for future purposes, if any, but obviously we're not going to take the verdict. I'm declaring a mistrial and I'm finding manifest necessity for that, because I don't think there's anything short of a mistrial ... that can cure it. The verdict's tainted, in my view, based on my findings.

> And to be explicit about it, as the finder of fact, I don't find it credible that all 12 of these people despite the answer they gave me about no impact on their decision, I think at least one, and probably more than one of them ... had these serious concerns about their safety. It really beggars my reason and common sense that it could not have had any impact on their deliberations and decision in this case.

The circuit court later added:

> So the record's clear and [Defense Counsel] has this appellate issue if it becomes one in the future, I am importing that standard from the juror misconduct cases in my ruling here.... And I'm finding that I cannot find beyond a reasonable doubt that there was no impact on the deliberations or verdict in this

case such that the verdict was not tainted.

On October 22, 2013, the circuit court entered its findings of fact (FOFs), conclusions of law (COLs), and order granting the State's motion for mistrial. The circuit court made the following relevant FOFs:

> 9. Seven of the jurors indicated discussion of the incident occurred before the verdict, ranging from within ten minutes of commencing deliberation to the end of deliberation. At least four of these seven jurors indicated discussion of the incident occurred at the beginning of deliberations, specifically that it was one of the first topics discussed.

> 10. During the discussion of the incident prior to verdict, the jurors who actually observed the incident communicated to the other jurors fear for their own safety.

> 11. Some of the juror answers regarding Communication No. 2 and the incident included the following:

>> a. Some jurors were worried about retaliation;

>> b. The unidentified male's look appeared hostile during the incident;

>> c. Some jurors were concerned;

>> d. Some jurors felt intimidated; and

>> e. The incident impacted other jurors' decisions.

> 12. Although all twelve jurors indicated that neither the incident itself nor the discussion regarding the incident during the deliberations affected their own decision, at least one juror indicated that the incident appeared to have impacted the deliberation process and decision.

> 13. The incident was not part of the evidence in the case at hand.

> 14. The verdict was never taken for this case. At no point during the proceedings did the Court take, read or otherwise get any indication of the jury's verdict.

> 15. The Court finds that the jurors' statements that the incident did not affect their decision-making process and/or deliberations are not credible as evidenced by the

plain language of Communication No. 2 and answers of the voir dire of each individual juror.

**\*851** 16. The Court further finds that the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt.

The court made the following relevant COLs:

5. Communication No. 2 raised the concern of the Court and both counsel that the incident may have substantially prejudiced the right to a fair trial. After further investigating the totality of circumstances surrounding Communication No. 2, the Court concluded at least some of the jurors were not credible, although explicitly indicated they were not lying. The Court's concern is that although all twelve jurors unanimously agreed to release Communication No. 2, no juror admitted that the incident affected their own decision-making process. Furthermore, reason and common sense dictates that the incident did have an effect on the deliberations hence the impartiality of the jurors, which is not harmless beyond a reasonable doubt[.]

....

8. Under the totality of the circumstances in light of the plain language of Communication No. 2 and the voir dire of the individual jurors, the Court finds that the jury was not impartial in their [sic] deliberation and decision-making process. Based on the foregoing, there is no other remedy short of a mistrial to cure the issue at hand as neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict.

....

10. The incident underlying Communication No. 2 was both beyond the court's control and unforeseeable. Accordingly, based on Communication No. 2, and the totality of the circumstances, there is manifest necessity for a mistrial.

Gouveia filed a motion to dismiss based on double jeopardy, arguing that the circuit court erroneously found manifest necessity and, as such, "the continued prosecution of Defendant violates his federal and state constitutional rights against double jeopardy[.]" The circuit court denied Gouveia's motion.[2]

## C. Appeal to the ICA

Gouveia alleged two points of error to the ICA: 1) the circuit court abused its discretion in declaring a mistrial because manifest necessity was not present; and 2) the circuit court erroneously denied his motion to dismiss for violation of double jeopardy.

In a memorandum opinion, the ICA affirmed the circuit court's order denying Gouveia's motion to dismiss for violation of double jeopardy. First, the ICA noted that Gouveia's primary argument was "his challenge to the Circuit Court's finding that the jurors' statements that the incident did not affect their decision making process and/ or their deliberations were not credible." However, the ICA disagreed with Gouveia, and deferred to the circuit court's findings that the jurors were not influenced by the incident or the discussion: "[T]he Circuit Court was in a better position than this court to assess the credibility of the jurors, understand the dynamics of the trial process in this case, and evaluate the effect that the external incident had on the jurors' deliberations." Accordingly, the ICA held that the circuit court did not abuse its "broad discretion" in determining that manifest necessity existed for a mistrial.

The ICA also found that the circuit court had sufficiently considered alternative options to a mistrial when it concluded that "neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict." The ICA further noted that, in any event, Gouveia had failed to argue on appeal that the circuit court erred in failing to consider options less severe than a mistrial.

The ICA also noted that there was a possible violation of Hawai'i Rules of Evidence (HRE) Rule 606(b), but that even if the **\*852** circuit court violated this rule in allowing the jurors to be questioned regarding the effect of the incident and the discussion on their verdict, Gouveia had waived any such argument by failing to object to the questioning in the circuit court, failing to raise it as an issue on appeal, and in relying on the jurors' testimony in his appellate briefs.

The ICA rejected Gouveia's argument that the circuit court erroneously denied his motion to dismiss on double jeopardy grounds because "[w]hen a trial court declares a mistrial that is supported by a proper finding of manifest necessity, 'retrial is not barred by the defendant's right against double jeopardy.' "

Chief Judge Nakamura dissented on the ground that "the Circuit Court's finding of manifest necessity was based on its erroneous view that such finding was *per se* required as a result of the jurors' expression of concern for their safety." The dissent agreed with the majority that any claim of error based on HRE Rule 606(b) was waived.

Gouveia sought review in this court, presenting three questions:

1. Did a divided [ICA] erroneously affirm the trial court's declaration of a mistrial, at the request of [the State], over [Gouveia's] objection, before receiving a jury's not guilty verdict, based on "manifest necessity" when each juror indicated that his or her verdict was not influenced by an extra-judicial incident?

2. Did a divided [ICA] erroneously affirm the trial court's denial of a Motion to Dismiss for Violation of Double Jeopardy based on the trial court's prior declaration of the mistrial?

3. Did a divided [ICA] erroneously rely on testimony which should not have been permitted pursuant to Rule 606(b) of the [HRE]?

## II. Standards of Review

### A. Declaration of Mistrial and Finding of Manifest Necessity

[1]  [2]  [3]  A trial court's declaration of a mistrial is reviewed under the abuse of discretion standard. A determination of manifest necessity is likewise left to the sound discretion of the trial court. An abuse of discretion occurs when the decisionmaker exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party.

State v. Wilmer, 97 Hawai'i 238, 243, 35 P.3d 755, 760 (2001) (citation and quotation marks omitted).

### B. Denial of Motion to Dismiss for Violation of Double Jeopardy

[4]  [5]  [6]  [7]  "A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where the defendant consented to the mistrial or there was manifest necessity for the mistrial." Id. at 242–43, 35 P.3d at 759–60.

> The issue whether a reprosecution is barred by double jeopardy is a question of constitutional law. We review questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Accordingly, we review questions of constitutional law de novo under the right/wrong standard.

State v. Rogan, 91 Hawai'i 405, 411–12, 984 P.2d 1231, 1237–38 (1999) (citation and internal quotation marks omitted).

## III. Discussion

### A. The Circuit Court did not Rely on Improper Juror Testimony When it Concluded that Manifest Necessity Existed for a Mistrial

[8]  Gouveia argues in his application that pursuant to HRE Rule 606(b), the circuit court should not have permitted the jurors to be questioned about whether the incident or subsequent discussion of the incident affected their decisions and that the ICA's ruling that he had waived any claim of error based on HRE Rule 606(b) was "unfair." Gouveia argues that the incompetent evidence violated his right to a fair trial and, without it, there was no basis for the trial court's or the ICA's decisions.

HRE Rule 606(b) provides:

> Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of *853 a verdict or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing

the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may the juror's affidavit or evidence of any statement by the juror indicating an effect of this kind be received.

**[9]** **[10]** HRE Rule 606(b) is inapplicable to statements made prior to jurors reaching a verdict. See State v. Bailey, 126 Hawai'i 383, 402 n.23, 271 P.3d 1142, 1161 n.23 (2012). Once a verdict has been reached, however, "the court cannot consider the jurors' testimony as to the effect of the improper statement upon them." State v. Kim, 103 Hawai'i 285, 291, 81 P.3d 1200, 1206 (2003) (citation and quotation marks omitted). The court "can only consider whether such statement was made ... and whether, given the statement, we can say that [the defendant] had a trial before an impartial jury." Id.

Here, the court's questions to the jurors were appropriate, except for the questions regarding the effect of the incident on the verdict. See id. However, the court specifically found that it did not find the jurors' responses on that point to be credible, and in any event, the record indicates that the bases for the court's decision comported with the limitations imposed by HRE Rule 606(b).

For instance, in the written FOFs, the circuit court found that seven jurors indicated that discussion of the incident occurred before the verdict. At least four of these jurors indicated that the discussion occurred at the beginning of deliberations, and that it was one of the first topics discussed. It also found that the incident caused some jurors to feel concern, intimidation, and fear retaliation. Based on these facts, the court found that "the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt."

In short, the court properly asked the jurors what occurred, their reaction to what occurred, whether the incident was discussed by some or all of the jurors, when it was discussed during deliberations, the length of the discussion, and what other jurors said about the incident. Based on these answers, it concluded that there was manifest necessity for a mistrial. Accordingly, we do not agree with Gouveia that the circuit court relied on improper HRE Rule 606(b) testimony.[3]

## B. The Circuit Court did not Abuse its Discretion in Finding that Manifest Necessity Existed for a Mistrial Because the Presumption of a Possibility of Unfairness was not Rebutted Beyond a Reasonable Doubt

Gouveia argues that the circuit court abused its discretion when it found there was manifest necessity for a mistrial. Specifically, Gouveia contends that each juror stated that their verdict was not influenced by the incident or subsequent discussions regarding it, that the jurors' concerns regarding their safety were "peripheral to Gouveia's guilt or innocence[,]" and that there was "no evidence that the incident was used as a circumstance against either party." Lastly, Gouveia adopts the argument in the ICA's dissent that "the circuit court's finding of manifest necessity was based on its erroneous view that such finding was per se required as the result of the jurors' expression of concern for their safety[.]"

We conclude that the circuit court did not abuse its discretion in deciding that manifest necessity existed for a mistrial because the presumption of prejudice could not be overcome beyond a reasonable doubt and no reasonable alternatives to a mistrial were available.

## *854 1. The circuit court did not abuse its discretion in finding that, under the totality of the circumstances, manifest necessity existed to warrant a mistrial

**[11]** The right to a fair trial is guaranteed to both defendants and to the State. Although the defendant has a valued right to have his case concluded by a single tribunal,

> **[12]** [b]ecause of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

State v. Quitog, 85 Hawai'i 128, 142, 938 P.2d 559, 573 (1997) (emphasis added) (quoting Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)).

[13] "A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where the defendant consented to the mistrial or there was manifest necessity for the mistrial." Wilmer, 97 Hawai'i at 242–43, 35 P.3d at 759–60. Manifest necessity is defined as "circumstances in which it becomes no longer possible to conduct the trial or to reach a fair result based upon the evidence." Id. at 244, 35 P.3d at 761 (quoting Quitog, 85 Hawai'i at 143, 938 P.2d at 574). Hawai'i law states that termination of prosecution is not improper, and thus a defendant can be retried, when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the State[.]" HRS § 701–110(4) (b) (iii).

[14] Therefore, manifest necessity protects the right to a fair trial for both the defendant and the State. See State v. Deguair, 136 Hawai'i 71, 91, 358 P.3d 43, 63 (2015).

In Wilmer, we noted that "[b]ecause manifest necessity is a high standard not to be declared lightly, a trial judge should record his or her reasons for declaring a mistrial and include the reasons for finding manifest necessity." 97 Hawai'i at 245, 35 P.3d at 762. Moreover, we stated that "it is impossible to define all the circumstances that would render it proper to interfere by declaring a mistrial" and that "no standard can be applied mechanically or without attention to the particular problem confronting the trial judge." Id. at 244–45, 35 P.3d at 761–62 (citations, quotation marks, and brackets omitted). A determination of manifest necessity is left to the sound discretion of the trial court. Id. at 243, 35 P.3d at 760.

[15]  [16] When circumstances arise that could influence the impartiality of the jury and thus affect the ability to reach a fair result based on the evidence, a rebuttable presumption of prejudice is raised. See id. at 244, 35 P.3d at 761; see also State v. Napulou, 85 Hawai'i 49, 55–56, 936 P.2d 1297, 1303–04 (1997). To overcome such a presumption, the trial court, after investigating the totality of the circumstances, must find that the outside influence on the jury was harmless beyond a reasonable doubt. Wilmer, 97 Hawai'i at 244, 35 P.3d at 762. If this influence cannot be proven harmless beyond a reasonable doubt, then the court must look at all reasonable alternatives to

cure the harm before declaring a mistrial. State v. Minn, 79 Hawai'i 461, 465, 903 P.2d 1282, 1286 (1995).

[17]  In the present case, upon receiving Communication No. 2, both counsel recognized that the possibility of an improper influence existed and requested that the court question the jurors. This possibility of an improper influence created a rebuttable presumption of prejudice. Wilmer, 97 Hawai'i at 244, 35 P.3d at 762. The circuit court agreed to the request, conducted voir dire of each juror individually, and allowed both the DPA and defense counsel to question the jurors. Therefore, the issue here is whether the circuit court abused its discretion in finding that the presumption was not proven harmless beyond a reasonable doubt and no reasonable alternative to declaring a mistrial *855 existed. [4]

After questioning the jurors regarding the incident in the courtroom, the circuit court found that the majority of the jurors indicated that discussion of the incident occurred prior to the verdict and that some jurors communicated fear for their own safety. The circuit court also found that "the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt."

Based on these FOFs, the circuit court concluded that even though no juror admitted that the incident affected their own decision-making process, "reason and common sense dictates that the incident did have an effect on the deliberations hence the impartiality of the jurors, which is not harmless beyond a reasonable doubt[.]" The circuit court concluded that:

> [u]nder the totality of the circumstances in light of the plain language of Communication No. 2 and the voir dire of the individual jurors ... the jury was not impartial in their deliberation and decision-making process, [and] there is no other remedy short of a mistrial to cure the issue at hand as neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict.

In looking at the totality of the circumstances, including the discussion of the incident in the jury room and the likelihood that it was one of the first things discussed, the circuit court was well within its discretion to conclude that manifest necessity existed for a mistrial because the presumption of prejudice was not overcome beyond a reasonable doubt. Cf. Bailey, 126 Hawai'i at 402–03, 271 P.3d 1142 (trial court should have granted a new trial based on a juror's remarks during deliberations, despite other jurors saying the remarks did not affect their verdict).

Gouveia contends the circuit court committed clear error because there was no evidence in the record that the incident affected the jurors' decision-making process and/or deliberations. He bases this argument primarily on the fact that each of the twelve jurors stated that the incident did not affect his or her verdict, and asserts that without evidence to the contrary, the court must presume the jury follows the court's instructions in not considering outside evidence or being influenced by emotion.

**[18]** **[19]** Gouveia's argument misconstrues the applicable law. Once there is a showing that an outside incident may have influenced the jury, there is a rebuttable presumption of prejudice that must be overcome beyond a reasonable doubt. Napulou, 85 Hawai'i at 55–56, 936 P.2d at 1303–04. A prima facie showing of improper influence is all that is required to raise that presumption. State v. Chin, 135 Hawai'i 437, 448, 353 P.3d 979, 990 (2015). Therefore, it is the possibility of improper influence that must be disproved. Id. It is Gouveia, then, who must show that the court abused its discretion in concluding that under the totality of the circumstances, the outside influence was not harmless beyond a reasonable doubt.

Gouveia compares the facts of this case to a similar circumstance which occurred in Napulou. In Napulou, the jury sent a communication to the court after some members of the defendant's family were seen entering the same parking lot as the jurors. The communication, sent immediately after the incident **\*856** was mentioned in the jury room and prior to a verdict being reached, asked, "[i]f a guilty verdict is given, could there be a danger to some of us or has some arrangement been made for protection?" Napulou, 85 Hawai'i at 51–52, 936 P.2d at 1299–300. The trial court, after conducting voir dire of the jurors, found the jurors could be impartial and denied

Napulou's motion for a mistrial. Id. at 54, 936 P.2d at 1302. The ICA affirmed, finding that the trial court was empowered to assess the credibility of the jurors and that the record supported the conclusion that any improper comments were harmless beyond a reasonable doubt. Id. at 56, 936 P.2d at 1304.

This case is distinguishable from Napulou. Notably, the communication in Napulou occurred prior to the verdict, and thus the court could rely on the jurors self-assessment as to whether they could remain impartial. See Bailey, 126 Hawai'i at 402 n.23, 271 P.3d at 1161 n.23. The voir dire of the jurors in Napulou revealed that the concerns were "peripheral to the matter of Napulou's guilt or innocence" and that "the jurors paid little attention to members of Napulou's family." Napulou, 85 Hawai'i at 56, 936 P.2d at 1304. Further, the trial court found the jurors' assertions that "they could continue as impartial jurors, unaffected by the safety concerns that had disturbed them" to be credible. Id.

In contrast, the jury communication in the instant case was a statement that the jurors were actually concerned for their safety, not merely inquiring into the possibility of danger. Additionally, at least four jurors stated that the discussions of the incident and potential danger happened at the beginning of deliberations, which indicates those discussions could have had an effect on the subsequent jury deliberations. Under these circumstances, the circuit court was well within its discretion to conclude that under the totality of the circumstances, the outside influence was not harmless beyond a reasonable doubt.

### 2. No reasonable alternative to a mistrial would have eliminated the potential of prejudice

**[20]** After determining that there was an outside influence on the jury, the circuit court was required to consider all reasonable alternatives that would be less severe than a mistrial. "When examining the record for evidence of manifest necessity, we must determine whether the trial court sufficiently considered ... less severe options available and balance[d] the accused's rights against the public interest." Minn, 79 Hawai'i at 465, 903 P.2d at 1286.

In Napulou, the trial judge was able to question the jurors prior to a verdict being delivered. During this process, the court was able to alleviate any lingering concerns the jurors had regarding their safety. Cf. 85 Hawai'i at 56, 936 P.2d at 1297. This, along with the trial court's finding that

the jurors' statements about being able to proceed without the outside influence affecting their deliberations were credible, allowed the court to proceed without concern for the impartiality of the jury.

In Wilmer, this court found that several instances of prosecutorial misconduct resulted in little actual prejudice to the defendant. 97 Hawai'i at 245, 35 P.3d at 762. The inappropriate conduct arose prior to jury deliberations, and the trial court denied the defendant's request to proceed with the trial after finding that manifest necessity existed for a mistrial. Id. In reversing the trial court, we found "[w]hat little prejudice did result could have been cured through means other than a mistrial" and thus "the trial court abused its discretion in concluding there was manifest necessity for the mistrial because the circumstances creating an apparent need for a mistrial did not make it impossible for the trial to proceed." Id. at 245–46, 35 P.3d at 762–63.

**[21]** Here, unlike in Napulou and Wilmer, the jury reached a verdict, informed the court that they had reached the verdict, then notified the court that there was a concern for their safety because of the incident. Under these circumstances, the circuit court determined that the verdict was already tainted and that neither a continuance nor additional jury instructions to ignore the outside influence would have been effective. This determination was reasonable.

**\*857** Based on the facts of this case, the circuit court's determination that nothing short of a mistrial would have cured the potentially impartial jury was not an abuse of discretion.

### C. Because There was Manifest Necessity for a Mistrial, Retrial is not Barred by Double Jeopardy

The final issue raised is whether the ICA erroneously affirmed the trial court's denial of Gouveia's motion to dismiss for violation of double jeopardy. "A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where ... there was manifest necessity for the mistrial." Wilmer, 97 Hawai'i at 242–43, 35 P.3d at 759–60. In light of our ruling that the circuit court was within its discretion in concluding that manifest necessity existed, retrial of Gouveia is not barred by double jeopardy.

### IV. Conclusion

The circuit court did not abuse its broad discretion in determining that manifest necessity existed for a mistrial. Accordingly, it appropriately denied Gouveia's motion to dismiss on double jeopardy grounds.

Therefore, the ICA's June 4, 2015 judgment on appeal is affirmed, but for the reasons stated herein.

### DISSENTING OPINION BY NAKAYAMA, J.

Our review of this case focuses on two notes sent by the jury. The first note announced to the court that the jury had reached a verdict. The second note, signed four minutes after the first, expressed the jurors' concern for their safety based on the behavior of a man seated on the prosecutor's side of the courtroom. After questioning the jurors regarding the notes, the circuit court declared a mistrial based on manifest necessity, concluding that "the jury was not impartial in their deliberation and decision-making process" because of the possibility that they were influenced by the man's behavior.

The Majority concludes that the circuit court did not abuse its discretion in deciding that manifest necessity existed for a mistrial. However, under the totality of the circumstances, the record evidences that the jurors were impartial despite expressing concern for their safety. Additionally, under Hawai'i law, jurors' safety concerns are not per se grounds for declaring a mistrial. For these reasons, I respectfully dissent from section III.B of the Majority's opinion and conclude that manifest necessity did not exist for a mistrial. As such, I would hold that Gouveia's retrial is now barred by the protection against double jeopardy.

### I. BACKGROUND

During an argument on September 25, 2012, Gouveia punched or slapped Albert Meyer, who then fell and struck his head on the road. Days later, Meyer died from brain injuries related to the fall. Gouveia was arrested and charged with manslaughter in violation of Hawai'i Revised Statutes § 707–702(1)(a).

State v. Gouveia, 139 Hawai'i 70 (2016)

384 P.3d 846

After closing arguments were made and the jury entered deliberations, the jury sent the court two notes. The first note stated: "We reached a verdict." The second, signed four minutes after the first, stated: "Concern. This morning on prosecutor's side of crtroom [sic] there was a man, shaved head, glaring and whistling at defendant. We have concern for our safety as jurors."

The circuit court conferred with counsel for both sides. Defense counsel stated that he knew nothing about the incident described in the second note. The prosecutor stated that, while she did not witness the incident, she did know that the decedent's brother, who had a shaved head, was in the courtroom and that "he was pretty upset."

The circuit court decided to investigate this matter further before opening the verdict by conducting a voir dire of the jurors. The circuit court, along with counsel for both sides, questioned all twelve jurors individually. The voir dire revealed the following: 1) four jurors witnessed a man, seated on the prosecutor's side of the courtroom, whistling and/or glaring at Gouveia, and that this incident was brought to the attention of the other jurors sometime during deliberations; 2) seven jurors testified that discussion of the **858 incident occurred before the verdict was reached; 3) one juror testified that the incident "appear[ed] to have an impact on other people's decision[,]" although it did not impact her decision; and 4) all twelve jurors testified that "neither the incident itself nor the discussion regarding the incident during the deliberations affected their own decision[.]".

At the conclusion of voir dire, defense counsel stated that he wished to take the verdict. The State, in contrast, moved for a mistrial, arguing that there was manifest necessity because the incident was discussed during deliberations and seemed to influence some jurors. When the State began to explain that the incident tainted the verdict because of the facts of the case, the circuit court interrupted and asked the following:

> Doesn't matter, I mean, does it even matter what the facts or what's in dispute? Isn't it—don't you think it's per se an inappropriate extraneous circumstance that if the jurors have concerns for personal safety based on something they observed in the courtroom being done by somebody in the gallery, that if it entered their

> discussions and had an impact on any of them, that it would taint the verdict?

The State agreed.

Defense counsel argued that a mistrial based on manifest necessity was not required because "[e]very one of the jurors" testified that the incident had no impact on their decision, and that most of the jurors indicated that the concern was more of an afterthought that had no bearing on the deliberations.

After listening to the arguments, the circuit court orally granted the State's motion for mistrial:

> I find it difficult to really believe when I, you know, apply my reason and common sense to this that at least some of these jurors have this, what strikes me as a really serious concern for their personal safety and it came up according to, at least as I count, four or five of them, it came up, was one of the first things, one of the first things, one of the first topics of discussion when they got back in the room and started deliberating the case. Somebody brought it up and they started talking about it. It frankly beggars my reason and common sense that it would have no bearing on the deliberations in this case and therefore the verdict.

> I'm going to grant the State's motion for mistrial. I'm going to find there's manifest necessity for such based on what I said and all the—and everything else that's been put on the record, including my questions to counsel.

> The verdict's going to be sealed for future purposes, if any, but obviously we're not going to take the verdict. I'm declaring a mistrial and I'm finding manifest necessity for that, because I don't think there's anything short of a mistrial that's going—that can cure it. The verdict's tainted, in my view, based on my findings. [1]

On October 22, 2013, the circuit court entered its findings of fact, conclusions of law, and order granting the State's motion for mistrial, holding that there was manifest necessity for a mistrial.

## II. DISCUSSION

### A. Manifest Necessity Did Not Exist For A Mistrial.

"A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where the defendant consented to the mistrial or there was manifest necessity for the mistrial." *State v. Wilmer*, 97 Hawai'i 238, 242–43, 35 P.3d 755, 759–60 (2001) (citing *State v. Quitog*, 85 Hawai'i 128, 142, 938 P.2d 559, 573 (1997)). In this case, Gouveia did not consent to the mistrial; thus, our inquiry focuses on whether there was manifest necessity for the mistrial.

"Manifest necessity is defined as ... circumstances in which it becomes no longer possible to conduct the trial or to reach a fair result based upon the evidence." *Wilmer*, 97 Hawai'i at 244, 35 P.3d at 761 (quoting *Quitog*, 85 Hawai'i at 143, 938 P.2d at 574). When a fair result is potentially compromised because **\*859** of outside influences affecting the jury, the court must act:

> the initial step for the trial court to take ... is to determine whether the nature of the [outside influence] rises to the level of being substantially prejudicial.... Where the trial court does determine that such influence is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the outside influence to determine its impact on jury impartiality.... The standard to be applied in overcoming such a presumption is that the outside influence on the jury must be proven harmless beyond a reasonable doubt.

*State v. Williamson*, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991) (internal quotation marks and citations omitted; formatting altered); *see also State v. Napulou*, 85 Hawai'i 49, 55–56, 936 P.2d 1297, 1303–04 (App. 1997).

In short, Hawai'i courts utilize a two-step inquiry for determining whether a mistrial based on manifest necessity is warranted when outside influences occur: 1)

whether the nature of the outside influence on the jury could be substantially prejudicial to a fair trial, and, if so, 2) whether, under the totality of the circumstances, the outside influence on the jury was harmless beyond a reasonable doubt.

Under the first step, the circuit court correctly recognized that the outside influence raised the possibility of substantial prejudice to a fair trial and properly conducted an investigation to determine the impact of the outside influence on juror impartiality. Under the second step, however, I conclude for two reasons that the circuit court erred when it held that the outside influence was not harmless beyond a reasonable doubt.

### 1. The totality of the circumstances indicates that the outside influence on the jury was harmless beyond a reasonable doubt.

First, under the totality of the circumstances, the timing and substance of the jury communications, along with the jurors' testimonies during voir dire, indicate that the verdict was not tainted by the outside influence and was thus harmless beyond a reasonable doubt.

The record evidences that the jury signed the first note, announcing that they had reached a verdict, four minutes before signing the second, which expressed their safety concern. The timing of the notes indicates that the verdict was reached <u>before</u> the jurors decided to express their concern to the court, which implies that the concern stemmed from the verdict. This implication is supported by the voir dire testimony of several jurors:

[THE COURT]: And do you have any idea, was there any discussion or do you have any inferences or anything about why the jurors thought I should know about this? Did they want me to do something about it, or what was you all's intention, if you can tell me that, of communicating this to me?

[JUROR # 3]: <u>I think that everyone wanted to feel that they could leave safely today when it was over.</u>

(Emphasis added).

[DEFENSE COUNSEL]: Did anybody—okay, obviously there was a decision to inform the Court and express concern. What kind of concern was expressed?

[JUROR # 4]: <u>I think it was once the verdict was read, that maybe there would be some retaliation against, you know, of us for whatever reason just being a juror.</u>

...

[DEFENSE COUNSEL]: What were the discussions about—the concerns, I guess, how's that?

[JUROR # 4]: Just like what I said before <u>that once the verdict was, you know, like I said, was said, we would be in jeopardy or could be in jeopardy.</u>

(Emphasis added).

[THE COURT]: Best estimate. When did [discussion of the safety concerns] first come up—early, middle, late in the deliberations?

[JUROR # 7]: Towards the end.

*860 [THE COURT]: Toward the end. Not before?

[JUROR # 7]: No it wasn't before. <u>It wasn't about the case,</u> so we weren't really focused on it.

...

[THE COURT]: Okay, that's fine. About how long did you all talk about this?

[JUROR # 7]: Not very. Just brought it up for a few minutes, and then one of the ladies said, okay, <u>I wonder if that would be directed at us, you know, after everything's done,</u> and maybe we should just raise it so everybody can be aware that there was someone that seemed threatening to another person.

(Emphasis added). These testimonies indicate that the safety concern arose because of the substance of the verdict reached by the jurors, and that the concern did not influence the jurors' deliberation of the verdict. Additionally, all jurors testified during voir dire that the incident did not affect their ability to be impartial jurors.

Finally, even if we were to conclude that the jurors' concern for their safety did influence the verdict, the logical implication of that conclusion is that the jurors would have been influenced to decide against Gouveia for fear of retribution by the man they observed glaring and whistling at Gouveia. However, the above testimonies of jurors three, four, and seven indicate that the jurors were

concerned for their safety post-verdict, which suggests that they decided in favor of Gouveia and were fearful of retaliation by the shaved-head man.[2] As such, the jurors' testimonies lend support to the conclusion that the outside influence did not taint the verdict but simply raised concerns amongst the jurors of possible retaliation after the verdict was read.

Therefore, although this incident raised the possibility of substantial prejudice to a fair trial, the totality of the circumstances reveals that the outside influence did not taint the verdict and was thus harmless beyond a reasonable doubt.

### 2. Jurors' safety concerns are not per se grounds for declaring a mistrial.

Second, safety concerns like those expressed by the jurors in this case are not, on their own, sufficient grounds for declaring a mistrial under Hawai'i law.

For example, in *State v. Napulou*, 85 Hawai'i 49, 936 P.2d 1297 (App. 1997), the ICA considered a similar set of facts and issue. During deliberations in a second degree murder and burglary trial, the empaneled jurors discussed amongst themselves their concerns that members of the defendant's family were following jurors from the courtroom to the parking area. *Id.* at 51, 936 P.2d at 1299.

The jurors eventually sent a communication to the court, which stated: "Some jurors have noticed members of [Napulou's] family following them downstairs and toward the car garage. If a guilty verdict is given[,] could there be a danger to some of us or has some arrangement been made for protection." *Id.* at 51–52, 936 P.2d at 1299–300. The circuit court conducted a voir dire of each juror and each juror testified that he or she could continue to deliberate on the evidence fairly and impartially. *Id.* at 54, 936 P.2d at 1302. After the voir dire, Napulou moved for a mistrial, which was denied by the circuit court. *Id.* Napulou was convicted of attempted murder in the second degree, burglary in the first degree, and assault in the second degree. *Id.* at 51, 936 P.2d at 1299. Napulou appealed, arguing that the circuit court erred when it denied his motion for a mistrial because the evidence indicated that the jury's verdict had been tainted by their concern for their safety. *Id.*

State v. Gouveia, 139 Hawai'i 70 (2016)

384 P.3d 846

On appeal, the ICA affirmed the decision of the circuit court, concluding that the "statements of the jurors on voir dire, if believed, were sufficient to establish beyond a reasonable doubt that Napulou was not denied an impartial jury." *Id.* at 56, 936 P.2d at 1304. In coming to this conclusion, the ICA considered the following:

> In Napulou's case, the trial court implicitly recognized that the jurors' comments regarding **\*861** their safety concerns and possible retaliation by Napulou's family possibly affected Napulou's substantial right to receive a fair trial by an impartial jury. The court therefore conducted a voir dire of each juror outside the presence of the other jurors, in accordance with Williamson, to determine if any jurors had actually been tainted by the jury's discussion about Napulou's family.
>
> The trial court questioned each juror individually. The proceedings were unhurried and thorough. Napulou's defense counsel was permitted to question the jurors and did so at some length. The questioning revealed that the jurors paid little attention to members of Napulou's family. Clearly, any concerns of the jurors about Napulou's family were peripheral to the matter of Napulou's guilt or innocence and did not have a direct bearing on the evidence in the case. Neither the court nor counsel elicited any evidence during the voir dire to indicate that the jurors' comments regarding Napulou's family were "used as a circumstance against" Napulou or that jurors considered the comments in question during their deliberations. Furthermore, the three jurors who appeared most concerned for their safety, jurors Nos. 2, 9, and 12, were positive in their assertions that they could continue as impartial jurors, unaffected by the safety concerns that had disturbed them.

*Id.* Thus, the ICA determined that the jurors' safety concerns were not per se grounds for declaring a mistrial.

Similarly, in the current case, the jurors sent a communication to the court expressing concern for their safety. The circuit court recognized that the jurors' concern raised the possibility of substantial prejudice to a fair trial and conducted a voir dire to determine if the verdict had been tainted by the jurors' concern. As in *Napulou*, the circuit court, and counsel for both sides, questioned each juror individually. And, as in *Napulou*, each juror indicated that the safety concern did not affect his or her deliberation of the case. As such, *Napulou*

and the current case are factually similar in important ways, namely that: 1) jurors in both cases expressed safety concerns to the court, and 2) all the jurors, when questioned during voir dire, indicated that these concerns did not affect their ability to be impartial jurors. And yet, these factually similar cases had different outcomes.

In *Napulou*, the ICA upheld the trial court's denial of a motion for mistrial that was based on jurors' safety concerns. In contrast, the record in this case indicates that the circuit court relied heavily, if not solely, on the jurors' safety concern as a basis for declaring a mistrial. For instance, when questioning the prosecutor about her reasoning behind the motion for a mistrial, the circuit court asked:

> Isn't it—don't you think <u>it's per se an inappropriate extraneous circumstance</u> that if the jurors have concerns for personal safety based on something they observed in the courtroom being done by somebody in the gallery, that if it entered their discussions and had an impact on any of them, that it would taint the verdict?

(Emphasis added). Thus, it appears that, in reaching its conclusion, the circuit court believed that the jurors' safety concern, on its own, was sufficient grounds for a mistrial. This was error.

*Napulou* established that jurors' safety concerns are not per se grounds for declaring a mistrial. Based on this precedent, and the evidence in this case that the safety concern did not affect the jurors' impartiality, the circuit court should have concluded that any concern that the jurors had for their safety was peripheral to a determination that Gouveia was guilty or not guilty. *See also U.S. v. Maye*, 241 Fed.Appx. 638, 641–42 (11th Cir. 2007) ("We have explained that discussions among the jurors as to their fear of the defendants are not inappropriate, so long as such discussions do not lead them to form an opinion of the defendants' guilt or innocence of the offenses charged.") (formatting altered).

### III. CONCLUSION

384 P.3d 846

In sum, the totality of the circumstances evidences that the outside influence did not affect juror impartiality in this case. The *862 timing and substance of the juror communications, in addition to juror testimony during voir dire, strongly suggest that the jurors' safety concern merely stemmed from the verdict they reached, and did not factor into the verdict deliberations. Additionally, *Napulou* established that jurors' safety concerns, on their own, are not grounds for declaring a mistrial.

For these reasons, I conclude that the outside influence on the jury was harmless beyond a reasonable doubt and that manifest necessity did not exist to declare a mistrial. As such, I would hold that the State is barred under double jeopardy from trying Gouveia again.

**All Citations**

139 Hawai'i 70, 384 P.3d 846

Footnotes

1    The Honorable Glenn J. Kim presided.

2    Although it is apparent from the record that the parties believed the sealed verdict was "not guilty," this was not confirmed until the ICA unsealed the verdict on appeal.

3    The ICA concluded that Gouveia waived his HRE Rule 606(b) challenge by failing to object to the court's questioning of the jurors as to the effect of the incident on their decision-making. Because we conclude that the bases for the court's decision comported with the limitations imposed by HRE Rule 606(b), we do not reach the waiver issue, or endorse the ICA's discussion of that issue.

4    Gouveia argues that the circuit court found that manifest necessity was "per se" required due to the outside influence of the individual's behavior. This argument is without merit. The circuit court asked the DPA, "don't you think its per se an inappropriate extraneous circumstance that if the jurors have concerns for personal safety based on something they observed in the courtroom ... that if it entered their discussions and had an impact on any of them, that it would taint the verdict?" (emphasis added). It is clear that the court did not view the conduct as necessarily requiring a mistrial. In FOF 16, for example, the court found that based on the "totality of the circumstances," the effect on the verdict "was not harmless beyond a reasonable doubt." And in COL 10, the court concluded that "based on Communication No. 2, and the totality of the circumstances, there is manifest necessity for a mistrial." Based on this record, we disagree with Gouveia and the dissent that the circuit court believed that its finding of manifest necessity was per se required as a result of the jurors' safety concerns.

1    Although the verdict was not unsealed at the circuit court level, the record indicates that both the court and the parties believed that the verdict was "not guilty."

2    In fact, the verdict, unsealed at the ICA level, revealed that the jury did decide in favor of Gouveia. And while this court had the benefit of seeing the verdict where the circuit court did not, the record suggests that the circuit court also believed the verdict was not guilty.

**End of Document**                                            © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# CERTIFICATE OF SERVICE

I, PETER C. WOLFF, JR., hereby certify that on the date noted below, a

true and correct copy of the foregoing was served on:

DOUGLAS CHIN
State of Hawaii Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii  96813

NOLAN ESPINDA
Department of Public Safety Director
State of Hawaii Department of Public Safety
919 Ala Moana Boulevard, 4th Floor
Honolulu, Hawaii  96814

KEITH M. KANESHIRO
Prosecuting Attorney for the City and County of Honolulu
Department of the Prosecuting Attorney
1060 Richards Street
Honolulu, Hawaii  96813

DATED:  Honolulu, Hawaii, January 18, 2017.

PETER C. WOLFF, JR.
Attorney for Petitioner
Royce C. Gouveia